# Rɪᴄʜᴀʀᴅ Mᴄdᴏɴᴀʟᴅ

*v.*

# Jᴇssᴇ Sᴛᴀʀᴋᴇʏ *et al.*

1. Lᴇᴀsᴇ — *mistake reformed, when.* Where it clearly appears that in drawing a lease the scrivener has, by mistake, omitted to insert the declaration of a use, a court of equity will reform the deed and correct the mistake. But, until the mistake is satisfactorily shown, the instrument will .be presumed to correctly state the intention of the parties, by and to whom it was made.

2. Sᴀᴍᴇ — *evidence.* A court of equity will not reform a deed on loose and unsatisfactory evidence, such as the mere supposition and understanding of persons in the vicinity of the property. The testimony must be of persons who have the means of knowing, and do know, what the intention of the par_ ties was, and that a mistake did occur.

3. Tʀᴜsᴛ-ᴅᴇᴇᴅ — *change of uses.* After a trust has been declared in a deed, the grantor, by express agreement, or otherwise, has no power to alter and change the terms or conditions of the trust. The beneficiaries take, by the deed, a vested interest, that is not subject to the control of the grantor, nor to any change by the trustees.

4. Tʀᴜsᴛ — *for school purposes — its effect.* Under the school system established and supported by law, when real estate is conveyed to individuals as trustees and to their successors legally elected, to hold for school purposes, the presumption will be indulged, that it was for the use of public schools established and maintained at the public expense. Even if such were not the presumption, when the directors of the public school district are in possession, claiming under such a deed, they will be presumed to hold rightfully, as against persons showing no legal right to occupy the property, until the presumption is rebutted. Until claimants show legal or equitable rights, they cannot recover against such directors.

Aᴘᴘᴇᴀʟ from the Circuit Court of Madison county; the Hon. Jᴏsᴇᴘʜ Gɪʟʟᴇsᴘɪᴇ, Judge, presiding.

This was a suit in equity instituted by John Cox and Jesse Starkey, who sue for themselves and others, in the Madison Circuit Court, against Richard McDonald and James C. Martin. The bill alleges that Joel U. Starkey, in 1847, leased a lot of land for the term of ninety-nine years to Jesse Starkey, John Cox and Joel U. Starkey, as trustees, for the purpose of establishing a permanent school; that it was the instruction of

the lessor that it should be used for a day school through the week, and on Sundays to be used by religious denominations of the neighborhood for divine worship and Sunday-school purposes; that these last purposes were not expressed in drafting the lease; that a school house was erected thereon by subscription; that a meeting was afterward held by the different denominations, and arrangements agreed upon for their occupying the house and that they so used it with the consent of the trustees; that, on the adoption of the present school system, the officers of the law took possession of the property for common school purposes, with the understanding that it was still to be used as before, for divine worship; that defendants will not permit it to be so used. The bill prays a decree restraining them from obstructing complainants from using it for such purposes.

The defendants answered, denying all knowledge of the lease or intention of the lessor; admit that a school house was erected, but deny that it was to be used for other purposes; deny knowledge of rules made by the religious denominations for its occupancy; that the trustees surrendered the property to the directors, who have repaired it, and erected an addition to the building; that they have been in possession as school directors; and deny all claim of complainants; and admit they refused complainants the use of the property. A replication was filed to the answer.

The case was heard on bill, answer, replication and proofs, and the court rendered a decree according to the prayer of the bill; to reverse which defendants prosecute this appeal.

Mr. CHARLES P. HISE, for the appellant.

Mr. DAVID GILLESPIE, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The lease in this case, under which the school directors claim this property for school purposes, was executed by Joel U. Starkey, on the 9th day of February, 1847, to Jesse Starkey,

for the term of ninety-nine years. The lease demises the premises in these words : "For and in consideration of the many advantages to a neighborhood of a permanent school, I have leased unto Jesse Starkey, Joel U. Starkey, and John Cox, present trustees of the Bethel school, and to their successors after them, legally chosen according to law, for the purpose aforesaid," the premises in controversy, "for the full term of ninety-nine years from the date hereof, and by these presents do lease and quitclaim all right or title to said eighty rods of land so leased for the term and use aforesaid, unto said trustees and their successors, with all the appurtenances thereunto belonging, for the term above specified." That this, on its face, is a lease solely for school purposes, no one will or can controvert.

It is, however, contended that it was the intention of the parties to the lease, as well as persons residing in the neighborhood and contributing to the building, that it should be used also for church purposes ; and to establish that fact, proved that the different religious denominations of the neighborhood used it on Sundays for purposes of worship ; that the lessor was present and acted as secretary of the meeting when the time for its occupation by the different religious societies was agreed to and arranged, soon after the erection of the building, and its long use for Sunday-school and public worship, without interruption, are relied upon as evidence that the lease does not embody the agreement of the parties executing it. If there was a mistake in preparing the lease, and the design of the parties in declaring the use was defeated by mistake, accident or fraud, then chancery would unquestionably reform the instrument, so as to effectuate the agreement intended to have been expressed in the lease. But in such cases a court of equity will require clear and satisfactory proof of the mistake, before granting relief. It will not do so on loose, vague, and indefinite testimony.

In this case, Starkey, who made the lease, testifies that he has no recollection that any thing was intended that is not contained in the deed. The scrivener who drew the lease thinks it was intended that the premises were to be conveyed for both

school and church purposes, but that he used a blank lease and supposed that it would make no difference if it was omitted. He also testifies he has no knowledge of the intention of Starkey when he executed the lease. Several witnesses, not parties to the transaction, state that it was their understanding that the house was to be used for both purposes ; but they do not pretend to know that such was Starkey's intention, or that of the grantees. As to the evidence of mistake in drawing the lease, from the knowledge of witnesses, it certainly fails.

It is also insisted that the acts of the parties, such as permitting the various religious denominations to use the house for worship, the attendance of such worship by Starkey, and other circumstances, show that it was designed for religious worship as well as school purposes. In a case of doubt, these circumstances might shed light on the transaction, but, of themselves, are not sufficient to control and overcome an express grant for another purpose. It is not unusual for school houses, with or without the consent of the directors, to be used for the purpose of worship, and, when we find them so occupied, we may infer permission from the directors, but not ownership of the property by the church. The lease having been executed, the legal rights which it conferred became vested in the lessees, for the use as declared in the deed, and it was not within the power of the grantor, either by a subsequent deed, by parol declarations, or acts of his, to alter or vary those rights. Hence his acting as secretary, and attending worship in the house, could not, in the slightest degree, alter or affect the title he had conveyed. Nor could the understanding or expectations of strangers to the deed have the slightest effect on the title conveyed by the lease. The beneficiaries took under the deed a vested interest in the property, which neither the grantor nor the trustees had any power to change or pervert from the uses declared by the deed.

Our present school system was in force when this lease was executed. It is true, that important changes have been made in the law, but its essential principles are not altered. It then, as now, provided for public schools, to be supported at public

expense, and we must presume that this lease was made with a view to that system, or the lessor would have expressly limited its use to private school purposes, as it is to the directors and their successors elected according to law. Failing to do so, we must conclude that it was intended for public school purposes, and it has been so occupied and enjoyed. But, even if this were not true, the directors have the possession, and must be presumed to be the owners until the presumption is rebutted. Appellees claim title, and until they show that they are invested with legal or equitable rights, they are not in a position to question the title of appellants, or their power to control its use. The decree of the court below, for these reasons, must be reversed and the cause remanded.

*Decree reversed.*