# THOMAS PADFIELD

*v.*

# WILLIAM R. PADFIELD.

1. ASSIGNMENT—*of notes, whether as passing an interest or for collection.* Where a father, in consideration of his son's absolute undertaking to pay him $2000 per annum during his life for his support, assigned and transferred to the son a large sum in promissory notes, with the agreement on the part of the son that, after first deducting the amount furnished the father with interest thereon, to pay over two-thirds of the remainder collected on such notes to a brother and a sister, according to the last will of the father: *Held*, that, by such arrangement, one-third of the notes so transferred was vested absolutely in the son upon a sufficient consideration.

2. PROMISSORY NOTE—*whether absolute or conditional.* Where a son, in consideration of his father's transfer to him of promissory notes amounting to about $50,000, gave his note to the father for the payment of $2000 per annum during his natural life for his support, but to become void at his death: *Held*, that the son's note, even when considered in connection with the contract transferring the notes, was an absolute and unconditional undertaking to pay, and would be none the less binding should the transferred fund of the notes wholly fail.

3. TRUST—*voluntary—when binding.* An agreement for the creation of a voluntary trust, so long as it remains executory, will not be regarded as binding in equity; but where there is a voluntary gift or conveyance of property in trust, and nothing remains to be done by the donor or grantor to complete the transfer of the title, the relation of trustee and *cestui que trust* is established, and the equitable rights and interests growing out of the gift or conveyance, though made without consideration, will be recognized and enforced in chancery, except as against creditors and *bona fide* purchasers without notice.

4. Where a father assigned and transferred to his son a large number of notes for a considerable sum of money, in consideration of the son's undertaking to pay $2000 per annum during the father's life for his support, and under an agreement that the son was to collect such notes, and, after deducting from the proceeds the amount paid his father with interest, was to pay to two other parties, after the father's death, two-thirds of the remainder, according to the last will of the father: *Held*, on bill by the father against the son for an account and the surrender of the uncollected notes, that a trust was established as to two-thirds of the proceeds of the notes after deducting what might be paid to the father, which was

binding upon the parties, and that the *cestuis que trust* took a vested interest in the gift, liable to be affected by the exercise of the testamentary power by the donor; and that as the trust was coupled with an interest in the son to reimburse himself for his liability to the father, he was entitled to retain the property until the death of the father, in the absence of any abuse of trust on his part.

APPEAL from the Circuit Court of St. Clair county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

Mr. C. H. THOMAS, and Mr. B. B. SMITH, for the appellant.

Mr. J. BAKER, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The bill in this case alleges that, on the 26th of April, 1869, Thomas Padfield, the complainant, placed in the hands of William R. Padfield a large amount of promissory notes for the purpose of collection for complainant; that a large number thereof have been collected by defendant, which he refuses to account for, and the bill prays for an account and payment over of the amount of the notes collected, and for a return of those uncollected.

The answer denies the allegations of the bill, and sets up that the notes were assigned and delivered to defendant, one-third thereof absolutely, and the other two-thirds as trustee, as hereafter mentioned, under a contract, whereby the defendant, in consideration of the transfer of the notes, agreed to furnish to the complainant, for his support, the sum of $2000 annually, should he require it, during his life.

. The court below, on hearing, dismissed the bill. The complainant appealed.

The nature of the arrangement under which the notes were delivered and received is evidenced by the following instruments in writing, executed by William R. Padfield, to-wit: An instrument in writing headed as follows: "List of promissory notes belonging to Mr. Thomas Padfield." Then follows a long list of promissory notes, the total amount of

which is $42,800 principal, and $16,000 accrued interest, due at the time the instrument was made, at the foot of which is the following:

"I have received the foregoing notes and certificates of purchase from Thomas Padfield, which he has assigned and transferred to me; in consideration that I furnish him $2000 annually for a support, should he require it, during his natural life; and, after his death, I hereby obligate and bind myself to pay to Conrad Eisenmayer and J. M. Whittaker two-thirds of the amount collected and realized on said notes, deducting first the amount furnished to the said Thomas Padfield for his support, with interest on the same, for the use of James M. Padfield and Julia Bland, which amount so paid the said Conrad Eisenmayer and J. M. Whittaker are to dispose of as directed by the last will and testament of the said Thomas Padfield.

"April 26, 1869.                    W. R. PADFIELD."

And a note of William R. Padfield, as follows:

"For value received, I promise to pay to my father, Thomas Padfield, for his support during his natural life, the sum of $2000 annually, but at his death this instrument shall be null and void.

"April 26, 1869.                    W. R. PADFIELD."

On the same day, the appellant made his will, which, with the above instruments, was placed in the hands of Conrad Eisenmayer for safe keeping.

The notes were at the same time assigned and delivered to the appellee. Up to Jan. 1, 1872, appellee had paid to appellant $5333.35.

The evidence shows that James M. Padfield, Julia Bland and appellee are the only children of the appellant; that he was eighty years old in November, 1872, and had been thrice married, the last time in 1869.

The allegations of the bill in this case are wholly unsustained by the proofs.

No such case is made out as that of a delivery of the notes to the defendant for the purpose of collection for the complainant.

The proof very clearly establishes that, in consideration of defendant's absolute undertaking to pay complainant, for his support, $2000 per annum during his life, complainant transferred the property in question to defendant under a contract which vested one-third of it in defendant as owner, and two-thirds of it as trustee, during complainant's life. Although the contract permits the defendant, in accounting with Whittaker and Eisenmayer for the two-thirds, to deduct first the amount furnished complainant for his support, we regard that as only bearing upon the adequacy of the consideration, and not qualifying the obligation of the note.

The note is absolute on its face, and even considered in connection with the contract, we think the true construction of the note plainly is, that it is to be taken as absolute and unconditional, and that it would be none the less binding should the transferred fund of the notes wholly fail.

There is no room for question, in our judgment, that the title to one-third of the notes in question is vested absolutely in the defendant upon a sufficient consideration.

The only question which can arise, is in regard to the remaining two-thirds of the property. The title to that portion of it, in our opinion, is vested in the defendant as trustee, during the life of the complainant.

The position is taken by appellant's counsel, that the defendant was a voluntary trustee for complainant, and that the complainant can treat him as a resulting trustee, and recover the notes and money. Laying out of view the consideration which exists in this case, and assuming it to be a case of voluntary trust, the inquiry then would be, whether the trust was *perfectly created*, or whether there was but a voluntary agreement for the creation of a trust. In the latter case, a court of equity would not regard the agreement as binding, so long as it remained executory.

But where there is a voluntary gift or conveyance of property in trust, and nothing remains to be done by the grantor to complete the transfer of the title, the relation of trustee and *cestui que trust* is deemed to be established, and the equitable rights and interests arising out of the conveyance, though made without consideration, will be recognized and enforced in chancery, except as against creditors and *bona fide* purchasers without notice. *McDonald* v. *Starkey et al.* 42 Ill. 442; *Stone* v. *Hackett*, 12 Gray, 227; Perry on Trusts, sec. 98.

The transfer of the notes in question by assignment and delivery was complete, and vested in the defendant the legal title to the property, and fully created a trust as to two-thirds of it.

The only semblance of uncertainty or incompleteness in any way pertaining to the trust, is the concluding provision of the contract, that Eisenmayer and Whittaker were to dispose of the amount of the notes paid over to them for the use of James M. Padfield and Julia Bland, as directed by the last will and testament of complainant. We do not consider that this power of testamentary direction reserved to complainant can affect rights fixed by the contract, further than that these two children of complainant might be deemed to take a vested interest in the subject of the gift liable to be affected by the exercise of this testamentary power by complainant. But we deem it unnecessary to pursue this point, particularly as James M. Padfield and Julia Bland, the persons in interest, are not before the court.

There is another view which suffices for this case, and that is, that the trust estate in the defendant as to two-thirds of the property was coupled with an interest in the defendant, supported by a good consideration, because the contract authorizes him, in accounting with Whittaker and Eisenmayer at the close of the trust for the two-thirds, to first deduct therefrom the amount paid complainant for his support, with interest on the same. It is a sufficient answer to this suit, as it respects this portion of the property, that the defendant is

entitled to the retention of it in his hands, and the management of it, until the death of complainant, so long as he commits no abuse of his trust, in order that he may then reimburse himself from the fund the moneys that he may have furnished the plaintiff for his support, with interest thereon.

It is unnecessary to notice the objections taken to the oral testimony which was introduced, as the written evidence and oral testimony not objected to sufficiently showed the nature of the transaction and justified the decree, independent of any of the testimony that was objected to.

The decree must be affirmed.

*Decree affirmed.*