## CATHARINE PADFIELD

### *v.*

### WILLIAM R. PADFIELD *et al.*

1. TRUST—*executory, not enforced in equity.* Although a court of chancery will not lend its aid to complete a voluntary agreement establishing a trust, nor hold it binding and obligatory while it is executory, yet, if it is executed, although voluntary and without consideration, it will be sustained and enforced in all its provisions.

2. SAME—*whether executed or executory.* In determining whether a trust is an executed or only an executory one, the intention of the parties at the time of creating it, is an important and controlling element, and equity, discarding unmeaning and useless forms, will look to the substance of the act done, and the intention with which it was done, and carry out that intention.

3. EXECUTED TRUST—*can not be changed by will.* Where a party places property in the hands of a trustee for the use of his children, to be disposed of as directed by a will executed by him at the same time, the trust will be executed in accordance with such will, notwithstanding the will may be revoked and another one executed. The right of the party to make another will is not affected by such trust, but the right to dispose of or change the terms of an executed trust by will, does not exist.

4. A father transferred to his son a large amount of notes and other securities, and took from him an agreement to pay $2000 per annum for his father's support during his life, and to pay to certain parties named two-thirds of the proceeds of such notes and securities, upon the death of the father, for the use of a brother and sister named, which amount, so paid to such trustees, they were to dispose of as directed by the last will and testament of the father. At the same time, and as part of the same transaction, the father executed his last will and testament, and it and the son's agreement were all placed in the hands of one of the trustees named, for safe keeping. It appeared, from oral testimony, that the intention of the father

at the time was, to divide the notes and securities equally between his three children: *Held*, that the trust created by the agreement between the father and son was an executed one, and that the two-thirds to be paid to the trustees named was to be disposed of by them as directed by the will of the father made at that time, and that he had no power to change or otherwise dispose of the property by a subsequent will.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. C. W. & E. L. THOMAS, for the appellant.

Mr. JEHU BAKER, and Mr. JAMES M. DILL, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The circuit court, on hearing, dismissed the bill filed in this cause. The complainant appealed.

There is no dispute between the complainant and defendants in regard to facts. The points involved are questions of law.

It appears, from the record, that, on the 26th day of April, 1869, Thomas Padfield transferred, by indorsement, to his son, W. R. Padfield, a large amount of notes, mortgages and other securities, and received from him his promissory note and contract as follows:

"For value received, I promise to pay to my father, Thomas Padfield, for his support during his natural life, the sum of two thousand dollars ($2000) annually, but at his death this instrument shall be void.

April 26, 1869.                    W. R. PADFIELD."

"I have received the foregoing notes and certificates of purchase from Thomas Padfield, which he has assigned and transferred to me in consideration that I furnish him $2000 annually for a support, should he require it, during his natural life, and after his death I hereby obligate and bind myself to pay to Conrad Eisenmayer and James M. Whitaker two-thirds of the amount collected and realized on the foregoing notes, deducting first the amount furnished said Thomas Padfield for his support, with interest on the same, for the use of James M. Padfield

and Julia Ann Bland, which amount so paid the said Eisen-mayer and Whitaker are to dispose of as directed by the last will and testament of the said Thomas Padfield.

This April 26th, A. D. 1869.          W. R. PADFIELD."

On the same date, and as a part of the same transaction, Thomas Padfield executed his last will and testament, as follows:

" SUMMERFIELD, ILLINOIS, *April* 26, 1869.

In the name of God, amen. I, Thomas Padfield, of the town of Summerfield, county of St. Clair, and State of Illinois, of the age of seventy-seven (77) years, and being of sound mind and memory, do make this my last will and testament; that is to say—

*First*—I give and bequeath to my wife, Catharine Padfield, my house where we now reside, together with the following lots upon which the said house stands: lots No. 5, 6, 7, 8, in Jurney addition in the town of Summerfield. I also give to my wife all my household and kitchen furniture.

*Second*—I give and bequeath to my three children all the rest of my real estate and personal property of every description, including all my promissory notes and moneys; it is my wish to have it divided equal to William R. Padfield, to James M. Padfield, to Julia Ann Bland. I appoint said Conrad Eisenmayer and James M. Whitaker as my executors of this my last will and testament. Witness whereof I have hereunto set my hand and seal this 26th day of April, A. D. 1869.

THOMAS PADFIELD."

These three papers, after they were executed, were placed in an envelop, and, by agreement of the parties, left with Mr. Eisenmayer, for safe keeping.

At the date of this transaction, Thomas Padfield was 77 years old. He was then residing with complainant, who was his third wife. He had but three children: Wm. Padfield, James Padfield and Mrs. Bland, and they were issue of a former marriage.

Mr. Horner, who drew these papers, testified: " I saw these papers before, on the 26th day of April, 1869, on the day on

which they were drawn up; have not seen them since, until to-day. On that day, I went to Summerfield to transact some business for Thomas Padfield. When I first got there, he wanted me to draw up his will, which I did. He then said he wanted to give his personal property to his three children: Wm. Padfield, James Padfield and Mrs. Bland, reserving a support out of the same during his natural life."

Some time after the execution of these papers, Thomas Padfield made a second will, by which he revoked all former wills, and gave to each of his three children the sum of $5, and all the rest of his property of every kind he devised to the complainant, his wife. On the 11th of November, 1873, he died, and his will was duly probated.

The complainant, who is executrix and devisee under this last will, seeks, by the bill, to recover two-thirds of all the notes and securities, or the proceeds of the same, which were transferred by Thomas to Wm. R. Padfield. The one-third, it is conceded by the bill, belongs to William, and can be held by him under the contract made with his father.

The real controversy between appellant and appellees grows out of the proper construction to be given to the contract executed by Wm. R. Padfield on receiving these securities.

On the one hand, it is contended by appellant that, under the agreement, William Padfield took one-third of the property absolutely, and held the other two-thirds during the life of his father, but the *jus disponendi* remained with the latter; while, on the other hand, it is insisted by appellees that James Padfield and Julia Ann Bland took a vested interest in the two-thirds, which could not be taken away by any power or authority remaining in the father, Thomas Padfield.

In the case of *Padfield* v. *Padfield*, 68 Ill. 210, it was held, that the transfer of these notes by assignment and delivery vested in Wm. R. Padfield the legal title to the property, and created a trust as to the two-thirds of it.

If the trust thus established can be regarded as an executed trust, although voluntary, and without consideration, so far as James Padfield and Julia Ann Bland are concerned, it is a

principle of equity well established and uniformly acted upon, that it will be sustained and enforced in all its provisions. On the other hand, a court of chancery will not lend its aid to complete a voluntary agreement establishing a trust, nor hold it binding and obligatory while it is executory. *Padfield* v. *Padfield, supra;* Perry on Trusts, sec. 98.

The main point in this case, then, is, was this an executed or executory trust. In arriving at a correct determination of this question, it is all-important, and must be a controlling element, to ascertain the true intent of the parties at the time the notes were transferred and the contract executed. As was said in *Otis* v. *Beckwith*, 49 Ill. 135, equity, discarding unmeaning and useless forms, will look to the substance of the act done, and the intention with which it was done, and carry out that intention.

It is apparent, from the oral evidence as well as the papers executed, that Thomas Padfield, at the time he consummated the arrangement with his son, clearly intended to make an equal division of the property between his three children, and the only point upon which there can be any doubt, is, whether the papers, as drafted and executed, were so drawn as to carry out that intention.

The contract signed by Wm. R. Padfield provides that, upon the death of his father, he is to pay Eisenmayer and Whitaker two-thirds of the amount of the property, for the use of James M. Padfield and Julia Ann Bland, which amount so paid the said Eisenmayer and Whitaker are to dispose of as directed by the last will and testament of the said Thomas Padfield.

The will made on the same day divided the property between the three children.

It is claimed by appellant that, as the law gave Thomas Padfield the right to make a subsequent will, and revoke the one formerly made, and as the contract establishing the trust provided for the disposition of the two-thirds of the property as directed by the will, this contemplated a future settlement and a future act to be done by the author of the trust, and

thus rendered the trust executory. We do not so regard the contract creating the trust.

By giving the arrangement made between Thomas Padfield and his son a reasonable construction, keeping in view the evident intent of the parties, we can come to no other conclusion than that the trust was an executed one.

It is declared in the contract that the two-thirds of the property is to be paid to Eisenmayer and Whitaker, for the use of James M. Padfield and Julia Ann Bland. Had Thomas Padfield intended to reserve to himself the right or power to dispose of this property in the future, by will, to others, as he saw proper, no such language would have been used in the contract. If the property was placed in trust for the use of these two parties, as is declared, it is absurd to say the *jus disponendi* remained in the father. The two things are utterly inconsistent.

What, then, is the meaning of the last clause in the contract, "to dispose of as directed by the last will and testament of Thomas Padfield?"

It will be observed that the words here used do not manifest an intent on the part of Thomas Padfield to control this property by any act on his part in the future. The language used is not as he should thereafter direct by will to be made, but the plain and obvious meaning of the words used is, he had already directed by will the disposition of the property.

It does not affect the question in the least, that a party can revoke or change a will made, at pleasure.

Thomas Padfield had executed a paper, and deposited it, for safe-keeping, with another, which he termed a will. In this contract, which created and established a trust, he refers to the will which he had executed as containing evidence of the manner in which a division of property should be made between the children.

The fact that he had the right to make another will, and revoke the one made in the first instance, did not change the character of the trust established or the rights acquired under it.

If Thomas Padfield, in lieu of making a will, had written a letter and left it with Eisenmayer, in which he had directed a division of this property between the two children, and then, in the contract creating the trust, referred to the letter, the question would not have been other or different from the one presented by this record.

Upon the transfer of the legal title to the notes and securities by Thomas Padfield, Wm. R. Padfield executed the contract which created the trust, and the rights of James M. Padfield and Julia Ann Bland became fixed, and were not subject to any act that might be done by Thomas Padfield in the future.

We are, therefore, of opinion that the trust created was an executed one, and the decree of the circuit court will be affirmed.

*Decree affirmed.*