In re Estate of William Lilly, deceased. Appeal of Frederick Schier.

*Executors and administrators—Commissions.*

Testator died leaving an estate of about half a million dollars consisting of lands, interest in coal mining companies, stocks and bonds of various corporations, notes, etc. He was a partner in the coal mining companies, and he authorized his executors who were men of business capacity to hold or sell his interests in the companies as to them might seem best. He also authorized his executors to appoint one of their number acting executor, and directed that their appointee should receive compensation for his services in addition to the usual commission allowed to executors, and that he should share in such commission with his coexecutors. The executors retained the interest in the coal companies, and this course was beneficial to the estate. Twelve out of thirteen of the residuary legatees requested that a commission of five per cent should be allowed to the executors. *Held,* (1) that the testator intended by the use of the words "usual commissions" that his executors should have a commission of five per cent; (2) that aside from his intentions an allowance of five per cent was proper and reasonable.

Argued March 8, 1897. Appeal, No. 549, Jan. T., 1896, by Frederick Schier, from decree of O. C. Carbon Co., dismissing exceptions to auditor's report. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed. STERRETT, C. J., dissents.

Exceptions to auditor's report.

The auditor, Frank P. Sharkey, allowed commissions to the executors at the rate of five per cent.

Exceptions to the auditor's report were dismissed by the court in an opinion by CRAIG, P. J.

*Errors assigned* were in dismissing exceptions to auditor's report.

C. *LaRue Munson* and *Laird H. Barber,* with them *Addison Candor,* for appellant.—When General Lilly used the words "usual commissions" he had in mind the size of his estate, and must be taken to have meant a commission earned by the executors and rated in accordance with the estate.

The office of executor is not one of profit: Pusey v. Clemson,

9 S. & R. 204 ; McCauseland's App., 38 Pa. 470 ; Montgomery's App., 86 Pa. 234; Lang's Est., 13 W. N. C. 15.

The number of executors makes no difference in the rate of commissions : Walker's Est., 9 S. & R. 223.

With much care we have gone over all the reported cases in Pennsylvania where the question of compensation to executors or administrators has been considered, selecting those of larger amounts for authority in the case at bar.   In none of them will it be found that any such commissions have been allowed as are claimed in this estate, and we challenge the production of any decision by which a commission of five per cent on $470,000 can be sustained.  Pusey v. Clemson, 9 S. & R. 204,—$100,000, 3 per cent, six or seven years.   Walker's Estate, 9 S. & R. 223,— $37,000, 3 per cent, three executors.   Stevenson's Estate, 4 Wharton, 98,—$350,000, a leading case, 3 per cent.   Great labor and personal loss to executors.   Whelen's App., 70 Pa. 410,— $168,000, 3 per cent, three executors.   Lloyd's Estate, 82 Pa. 143,—$66,000, five years, 5 per cent held to be excessive.   Montgomery's Appeal, 86 Pa. 230,—$42,000, 1½ per cent.   Stewart's Appeal, 110 Pa. 410, 426,—$127,000, 3½ per cent, nine years. Greatresponsibility.  Oliver's Estate, 21 W. N. C. 318,—$711,000, 3½ per cent.   Whole time of executor given.   He largely increased the estate.   Lang's Est., 13 W. N. C. 14,—$250,000, 2⅔ per cent.   Zeigler's App., 4 Atlantic Rep. 837 (also 3 Central Rep. 571),—$74,000, 3 per cent, three executors.   No commissions allowed on stocks taken by heirs.

The executors are not entitled to commissions on stocks delivered to the heirs in specie, and at the inventoried price ; nor upon the debt of one of the executors to the estate : Zeigler's App., 3 Cent. Rep. 571 ; McCauseland's App., 38 Pa. 466 ; Hoffer's Est., 156 Pa. 473.

The consent of other legatees to the commissions claimed does not bind the appellant.

*Horace Heydt*, with him *William G. Freeman* and *E. O. Nothstein*, for appellees.—We submit that the term "usual commissions," as used by the Supreme Court, by the legal fraternity, and as understood by the ordinary business man, is five per cent of the amount passing through the hands of the accountants : Harbster's App., 125 Pa. 8 ; Guien's Est., 1 Ash-

mead's Rep. 318; Eshleman's App., 74 Pa. 42; Skinner's Est., 17 Leg. Int. 381; Walker's Est., 9 S. & R. 225; Barton's Est., 1 Pars. Equity Cases, 25; Bird's Est., 2 Pars. Eq. Cases, 173.

The judgment and experience of three executors were worth more to this estate than the judgment and experience of one would have been.

The consent of the majority of the legatees to the executor's commissions is an expression of opinion by the parties interested against their interest, and, as such, is evidence.

The commissions claimed are reasonable: Gyger's App., 74 Pa. 48; Davis's App., 100 Pa. 201; Heckert's App., 24 Pa. 482; Brolasky's Est., 4 Dist. Rep. 218; Trenton Iron Co.'s App., 166 Pa. 131; Barclay's Est., 2 W. N. C. 447; Oliver's Est., 20 W. N. C. 318; Stewart's Est., 1 Lack. Jur. 225.

OPINION BY MR. JUSTICE McCOLLUM, May 27, 1897:

The accountants are executors of the estate of William Lilly, deceased. Twelve of the thirteen residuary legatees, being satisfied that the commissions claimed by them were reasonable, filed with the auditor a request that the same should be allowed. As twelve thirteenths of these commissions if allowed would be virtually paid by them we may reasonably infer that they gave some thought to the subject before executing and filing the request. According to the contention of the appellant, however, they elected by their request to allow the executors to receive in commissions twelve thirteenths of at least $15,000 more than they earned or were entitled to. While we agree with the learned counsel for the appellant that the rights of the latter, as assignee and trustee under an antenuptial contract with one of the residuary legatees, are not impaired by this action of the other residuary legatees, we think it is a circumstance which ought not to be entirely ignored in the consideration of the question presented by the appeal.

The executors were friends and associates of the deceased in his lifetime, and men of known integrity and business capacity. He committed the administration of his estate to them because he had confidence in their disposition and ability to execute the trust in the interest of his beneficiaries. He had a large estate, consisting of lands, interests in several coal mining companies, stocks and bonds of various corporations, notes, horses, carriages, etc. He was a partner in each of the coal mining compa-

nies in which he had interests, and he authorized his executors to hold or sell these, as to them might seem best, subject however to a direction to sell them at any time upon the written request of a majority of the surviving residuary male legatees, to do so. He also authorized his executors to appoint one of their number acting executor, and directed that their appointee should receive compensation for his services in addition to the usual commission allowed to executors, and that he should share in such commission with his coexecutors.

The executors thought best with the approval of the legatees to hold the coal interests, and their conclusion to do so was manifestly an exercise of their discretion beneficial to the estate.

It was understood by the executors before taking the inventory that the testator had investments in western mortgages, but as their status and value were then unknown they were not included in it. Subsequent inquiry and investigation showed that the most of the mortgages had been foreclosed, and that he had land in place of them. The face value of the mortgages was about $110,000 but the actual value of them, or of the land covered by them, cannot, under present conditions, be definitely ascertained.

The labor and responsibilities involved in the proper administration of the estate and the care and skill shown by the executors in the performance of the duties connected with the trust must be taken into consideration in passing upon their claim, and so must the direction of the testator in regard to commissions for their services. He intended that they should have the usual commission allowed to executors. Did he mean by the words " usual commission " a commission of five per cent, or a commission which a court should adjudge to be sufficient to fairly compensate them for the responsibility and labor involved and the care and skill required in the proper execution of the trust? The learned auditor thought he meant the former, and the learned court below agreed with him in this view. Many cases were cited by the auditor as sustaining his interpretation, and many cases were cited by the appellant as opposed to it. An elaborate review of the cases is not deemed necessary. Five per cent is often mentioned in them as the usual commission and this, we think, is in accord with the common understanding of the people as to the meaning of these words. There can be

no doubt that in a very large majority of the estates of decedents there has been an allowance to the executor or administrator of a commission of five per cent. In Pusey v. Clemson, 9 S. & R. 209, TILGHMAN, C. J., referring to the matter of commissions said: "It is very desirable both for the sake of the executors and the family of the testator that there should be some standard to which both may look on the subject of commissions. And in the cases which generally occur it appears to me, after considerable research, that the common opinion and understanding of this country has fixed upon five per cent as a reasonable allowance. But to this rule there must be exceptions. There are estates, where the total amount is small, and that too collected in driblets. In such, five per cent would be insufficient. On the contrary there are others where the total being very large, and made up of sums collected and paid away in large masses, five per cent would be too much. It must be left to the courts to ascertain those cases in which the general rule should be departed from." We think that this quotation states, as fairly as any that can be made, the present state of the law in relation to the allowance of commissions to executors. We are, therefore, not convinced that the auditor and court below erred in holding that the testator intended his executors should have a commission of five per cent. But independent of the question of the testator's meaning in the use of the words "usual commission" we think the evidence in the case affords ample ground for the allowance of the accountants' claim. We do not propose to refer to or discuss the evidence in detail. The part of it which relates to the nature and value of the services rendered by the executors in the protection and management of the coal interests of the estate is quite sufficient, in connection with ordinary service in other branches of the administration of it, to justify, if not require, the allowance of the commissions claimed. There is no reason to discredit this evidence. The witnesses who gave it were disinterested, intelligent, and well qualified to testify in regard to the value as well as the nature of the services rendered as above stated.

Upon due consideration of the evidence and the undisputed facts and circumstances in the case, we are of the opinion that the decree of the court below should be affirmed.

Decree affirmed and appeal dismissed, the costs to be paid by the appellant.