F. E. McGILLICK COMPANY, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54088–54090, 55479–55482, 57819, 57820. Filed August 21, 1958.

[1] Proceedings of the following petitioners are consolidated herewith : F. E. McGillick and A. Louise McGillick, Docket Nos. 54089, 55480, 57819; Francis Edward McGillick Foundation, Docket Nos. 54090, 55479, 57820 ;. F. E. McGillick, Docket No. 55481; F. E. McGillick Company, Docket No. 55482.

*William Wallace Booth, Esq.*, and *Kenneth P. Simon, Esq.*, for the petitioners.

*Max J. Hamburger, Esq., George J. Rabil, Esq.*, and *Roy E. Graham, Esq.*, for the respondent.

In these consolidated proceedings respondent determined the following deficiencies:

| Petitioner | Year | Income tax deficiency | Additions to tax |
|---|---|---|---|
| Francis Edward McGillick Foundation | 1949 | $435, 849. 71 | [1] $108, 962. 43 |
| | 1950 | 4, 845. 47 | [1] 1, 211. 37 |
| | 1951 | 66, 901. 12 | [1] 16, 725. 28 |
| | 1952 | 10, 091. 84 | [1] 2, 522. 96 |
| F. E. McGillick Company | 1950 | 1, 700. 64 | [1] 425. 16 |
| | 1951 | 7, 297. 10 | [1] 1, 824. 28 |
| | 1952 | 20, 473. 99 | [1] 5, 118. 50 |
| F. E. McGillick and A. Louise McGillick | 1949 | 429, 353. 37 | |
| | 1950 | 6, 850. 84 | |
| | 1951 | 53, 150. 40 | [2] 3, 129. 02 |
| F. E. McGillick | 1952 | 10, 938. 72 | { [2] 680. 07 [3] 1, 133. 45 |

[1] Under sec. 291 (a).
[2] Under sec. 294 (d) (2).
[3] Under sec. 294 (d) (1).

By amended answer respondent seeks an increased deficiency against the Foundation in income tax and addition to tax for the year 1952 in the respective amounts of $12,126.48 and $3,031.62, making total deficiencies claimed for that year against that petitioner in the respective amounts of $22,218.32 and $5,554.58.

The issues are:

(1) Whether the Francis Edward McGillick Foundation was an organization exempt from income taxes within the purview of section 101 (6), I. R. C. 1939, during the years 1949 through 1952, and if not: (a) Was the Foundation during the years 1949 through 1952 entitled to deductions from its gross income under section 162 (a), I. R. C. 1939? (b) Did distributions of property by the F. E. McGillick Company to the Foundation during the years 1949 through 1952 constitute taxable dividends? (c) Was $10,000 per annum reasonable compensation for the services rendered by F. E. McGillick as trustee, president, and general manager of the Foundation during 1950? (d) Is the Foundation subject to additions to tax under section 291 (a), I. R. C. 1939, for failure to file returns for the years 1949 through 1952?

(2) Whether the F. E. McGillick Company was an organization exempt from income taxes within the purview of section 101 (6), I. R. C. 1939, during the years 1950 through 1952, and if not: (a) Did the Company realize a taxable gain in 1952 from an exchange of property? (b) Was $10,000 per annum reasonable compensation for the services rendered by F. E. McGillick as trustee, president, and general manager of the Company during 1950? (c) Is the Company subject to additions to tax under section 291 (a), I. R. C. 1939, for failure to file returns for the years 1950 through 1952?

(3) Whether the income of the Francis Edward McGillick Foundation was taxable to F. E. McGillick as grantor under the provisions of section 22 (a), section 166, or section 167, I. R. C. 1939, during the years 1949 through 1952.

(4) Whether F. E. McGillick is liable for additions to tax under section 294 (d) (1), I. R. C. 1939, for failure to file a declaration of estimated tax for 1952.

Respondent concedes that the addition to tax under section 294 (d) (2), I. R. C. 1939, for underestimation of estimated taxes by petitioners, F. E. McGillick and A. Louise Schultz McGillick, is not applicable for the calendar years 1951 and 1952.

### FINDINGS OF FACT.

All of the facts were stipulated and are found accordingly.

Petitioner, the F. E. McGillick Company, hereafter called the Company, is a corporation organized on June 22, 1932, under the laws of Pennsylvania, having its principal place of business at 503 North Homewood Avenue, Pittsburgh, Pennsylvania. During the years in issue, it engaged in the business of buying and selling real estate, holding real estate for investment purposes, and renting and managing various properties owned by it. The Company also owned and operated a motion-picture theater from 1949 through 1951.

Petitioner, F. E. McGillick, hereafter called McGillick, formed the Company by the transfer of property owned by him, having a net cost basis, adjusted for depreciation, of $187,647.63, and cash of $500, in exchange for the total authorized capital stock of 50 shares. On January 3, 1933, McGillick transferred property having a net cost basis, adjusted for depreciation, of $57,339.16 to the Company, and on December 31, 1942, he contributed cash in the amount of $4,000 to the Company.

The accounting books and records of the Company were kept on an accrual basis, and its accounting period was the calendar year. Prior to 1950, the Company filed its corporate income tax returns with the collector of internal revenue for the twenty-third district of Pennsylvania, but for the years 1950 through 1952, it filed no such returns.

The failure to file returns for these latter years was not due to reasonable cause.

Petitioner, A. Louise Schultz McGillick, hereafter called Louise, owned 1 share of stock of the Company from December 29, 1949 through 1952. Petitioner, the Francis Edward McGillick Foundation, hereafter called the Foundation, owned the remaining 49 shares and had its principal office at 503 North Homewood Avenue, Pittsburgh, Pennsylvania. The Foundation was created on January 6, 1937, as a trust under the laws of Pennsylvania by McGillick, who assigned 41 shares of stock of the Company to the Foundation. The declaration of trust provides:

the Trustees * * * declare that they will hold [the] property transferred to the * * * Foundation as well as all other property which they may acquire as Trustees, together with the proceeds and profits thereof, in trust, to manage * * * as * * * designated in this Agreement * * *

FIRST:

* * * * * * *

F. E. McGillick until his death shall vote the * * * 41 shares of the * * * Company, as Trustee, and shall be President and Manager of the Foundation, with power to add to the Foundation other assets he may * * * donate, add other Trustees, and change the proceedings of Trustees' Meetings.

* * * * * * *

IN CONSIDERATION OF the donations to and formation of the * * * Foundation, I, * * * McGillick, Donor, do hereby * * * direct the * * * Foundation through its Trustees to assume, pay, and carry out the following bequests and obligations, which are fully set forth in my Last Will and Testament, a copy of which is included herein and made a part hereof. Where Executors are mentioned in my said will, they are to act as Trustees of this Foundation. My Will and the Foundation are the same. At my death, all the Executors mentioned in my Will are to be Trustees of the Foundation.

The Trustees hereby accept this trust subject to the aforementioned bequests and obligations of the Donor as set forth in his Last Will and Testament, as follows:

LAST WILL AND TESTAMENT OF * * * McGILLICK.

* * * * * * *

1. I direct that all my funeral expenses and expenses of administration of my estate be paid out of my estate * * *

2. I give * * * unto my Executors * * * $1,000.00, to be expended for masses for the repose of my soul.

3. I give * * * unto my Executors * * * $2,500.00, to be expended for and in the erection of a suitable family marker * * *

4. I give * * * unto my Executors * * * $1,000.00, IN TRUST, however, to invest and keep invested, and to use the income therefrom in keeping markers, etc., and my cemetery lots * * * and markers of my parents' graves * * * in repair and good condition. * * *

5. I give * * * my sister, Elizabeth McGillick, * * * $400.00 per year, * * *

6. I * * * direct my Executors * * * to pay to my brother, Thomas J. McGillick, * * * $100.00 per year * * *

7. * * * I * * * give * * * my wife, Margaret A. McGillick, * * * $5,000.

8. I give * * * to my four children, * * * Francis E. McGillick, Charles A. McGillick, Louis J. McGillick and Marie Elizabeth McGillick Corbett, * * *

$5,000.00 each, to be paid out of my estate * * * after my decease without sacrificing any real estate. I also give * * * to each child * * * $2,500.00, to be paid * * * 5 years after my decease; and * * * $2,500.00, to be paid * * * 10 years after my decease, or a total to each child of * * * $10,000.00. * * * [I]f any child be deceased and have no issue, then his or her legacy shall go into and become a part of my residuary estate.

9. I * * * give * * * to my Executors, * * * who shall be Managers of the * * * Foundation, IN TRUST, * * * all the rest * * * of my estate, * * * to invest and to re-invest, and to pay from the net proceeds * * * the following annuities: To my wife, Margaret A. McGillick, * * * $1,500.00 per year * * *; to my children, * * * Francis * * * Charles * * * Louis * * * and Marie * * *, $1,500.00 per year * * *. If there is not sufficient income to pay my wife and children their annuities as set forth, then I direct my Executors to pay first to my wife * * * $1,500.00, and then to pay to each of my children one-fourth of the balance of the net proceeds then remaining. However, I direct that my Executors pay to each of my children whatever balance is owing any year to make the * * * $1,500.00 annuity, as soon as it is possible * * *. It is my desire that * * * if the whole is not paid in any one year, the balance shall be paid when it is made in the following year or years from income or sales. * * * If any child be deceased and have no issue, then his or her annuity shall go into and become a part of my residuary estate.

Upon the death of my wife * * * and all my children * * * the annuities shall cease * * * and I * * * direct my Executors to transfer * * * unto the * * * Foundation * * * the balance of principal, all unpaid income or net proceeds, and all my residuary estate * * *

10. The foregoing bequests and annuities * * * shall not be subjected to or liable for any debts, contracts, or liabilities of any beneficiary, nor shall * * * [they] be the subject of sale, assignment, or pledge by the beneficiary entitled thereto.

11. I direct that all taxes, state and federal, direct and collateral, shall be paid by my * * * Executors * * * out of my estate, without deduction of the same from any of said legatees or beneficiaries.

\* \* \* \* \* \* \*

13. Whereas it is my desire to devote a substantial portion of my estate to charitable and educational uses and purposes, now, therefore, to these ends, I do hereby create and establish the * * * Foundation.

I * * * direct my Executors * * *, in case I have not done so during my lifetime, to * * * organize a charitable and educational corporation * * * having powers to administer and control the affairs and property of the * * * Foundation, and to carry on the objects, uses and purposes of the said trust * * *

Upon the * * * organization of such corporation, I empower my Executors to convey * * * to said Corporation, monies, property or assets to provide for the two special funds created in paragraphs 16, 17, and 18 of this * * * Will, and to convey * * * to said Corporation, at such other times as in their discretion they may deem advisable, property and assets belonging to me and to which the * * * Foundation may * * * become entitled. In case any of my bequests should fall leaving any funds not herein provided for, the same shall go to the Foundation, for such charitable, educational and public * * * purposes as the * * * Managers of the * * * Foundation * * * shall * * * direct in conformity with my wishes hereinafter set forth.

14. I give to my * * * Executors * * * and their successors in the trust, full power * * * to manage, control, protect, sell, lease, invest, re-invest, and keep invested all the monies, securities, and other property * * * it shall receive

under this trust; and to pay all taxes * * *, also all premiums of insurance, and to keep the improvements upon the real estate insured and in good * * * repair, and to incur and pay such expenses necessary * * * out of the income belonging to the trust. I do not restrict the Managers * * * to any particular form or kind of investment, nor as to such as are allowed by law of Pennsylvania for the investment of trust funds, but I leave * * * [that] to the sound judgment and discretion of the * * * Managers * * *

I give the * * * Managers * * * [of the Foundation] power and authority to hold, sell, convey and transfer any and all of its property, real and personal, or to exchange the same for other property, real or personal, free and discharged of this trust, to sell either at public or private sale, for such price * * *, at such time * * *, and upon such terms * * * as the * * * Managers * * * may determine * * *

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

16. I * * * direct my Executors * * * to pay to the * * * Foundation for use of the Roman Catholic Diocese of * * * Pittsburgh * * * the sum of * * * $25,000.00, to be known as the F. E. McGillick Priesthood Fund, for the following purposes: To be invested and re-invested, and the income therefrom to be given each year to the Catholic Bishop of the Diocese of Pittsburgh * * * to be used for the education of worthy poor boys and young men to the priesthood. * * *

17. I * * * direct my Executors * * * to pay to the * * * Foundation for use of the Roman Catholic Diocese of * * * Pittsburgh * * * the sum of * * * $25,000.00, to be known as the Margaret A. McGillick Sisterhood Fund, for the following purposes: To be invested and re-invested, and the income therefrom to be given each year to the Catholic Bishop of the Diocese of Pittsburgh * * * to be used for the education of worthy poor girls and young women to the sisterhood * * *

18. I * * * direct my Executors, * * * when in their judgment it is advisable so to do, to set aside any part of the * * * $25,000.00 towards either of the funds mentioned in paragraphs 16 and 17. * * *

19. I * * * direct my Executors * * * when in their judgment and discretion there are more than sufficient funds to provide for the annuities to my wife and children, to transfer or set over to the * * * Foundation any surplus to form or create the * * * Priesthood Fund and the * * * Sisterhood Fund. After the creation of these two funds, I * * * direct my Executors, when in their judgment and discretion it is possible, to transfer * * * unto the * * * Foundation, whatever funds have accumulated which are not needed to care for the annuities, salaries, and other expenses, for the purposes and uses as set out in paragraph * * * 21. I also * * * direct my Executors to transfer * * * unto the * * * Foundation, upon the death of my wife and all of my children, the principal fund of my estate and all the unpaid income or net proceeds thereof.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

21. I * * * direct the Managers of the * * * Foundation to invest and re-invest all funds, and from the annual proceeds or net income after expenses are paid, to pay * * * ½ thereof to the Catholic Bishop of * * * Pittsburgh * * * to be used toward the institution of as many free scholarships as such income will maintain * * *. * * * This fund is to be known as the F. E. McGillick Educational Fund.

22. This payment of * * * ½ the income from the * * * Foundation * * * shall cease * * * when, in the opinion of my Executors, the principal and accumulations in the * * * Foundation are sufficient to establish a school in the

Pittsburgh Diocese large enough to accommodate * * * 50 pupils. Said school is to be * * * known as the Francis Edward McGillick Vocational School· * * * After this school is on a self supporting basis, other schools may be established in other locations if the Managers of the * * * Foundation deem it advisable * * *

\* \* \* \* \* \* \*

24. After a Vocational School or Schools are founded, it is my * * * desire that the assistance given by free scholarships * * * be continued by the Managers of the * * * Foundation. I * * * direct the Managers * * * either to set aside a special fund out of the * * * Foundation or create a fund by taking a percentage of the net earnings from any school for this purpose. Said funds to be invested and re-invested, and the income therefrom to be applied to free scholarships. * * *

\* \* \* \* \* \* \*

26. I direct my Executors and the Managers of the * * * Foundation to employ Miss A. L. Schultz * * * as Secretary to my Executors and to the * * * Foundation, at an adequate salary, but not less than * * * $2,500.00 per year, * * * and I direct that the said salary * * * shall * * * begin immediately after my decease.

27. My sons, or as many of them who wish, are to be employed in the handling of my estate and Foundation, at an adequate compensation, with no bearing as to my bequests to them. In case P. L. Corbett needs employment, and it is possible, he is to be employed.

\* \* \* \* \* \* \*

31. I nominate, constitute and appoint my three sons, Francis * * * Charles * * * and Louis * * *, and my son-in-law, P. L. Corbett, * * * and Miss A. L. Schultz, Executors of this my last Will and Testament. Said Executors shall also be Managers of the * * * Foundation. No bond shall be required of my executors, or Trustees, or Managers of the * * * Foundation, hereby appointed, nor of their successors.

The following data concerns the potential claimants under McGillick's will:

| Name | Relation to McGillick | Data |
| --- | --- | --- |
| Elizabeth McGillick | Sister | Died May 4, 1944. |
| Thomas J. McGillick | Brother | Died Aug. 31, 1940. |
| Margaret A. McGillick | First wife | Died May 14, 1943. |
| Francis E. McGillick, Jr | Son | Born Oct. 10, 1892. |
| Charles A. McGillick | Son | Born Sept. 28, 1894. |
| Louis J. McGillick | Son | Born Nov. 5, 1897, Died April 29, 1953. |
| Marie E. McGillick Corbett | Daughter | Born April 12, 1900. |
| A. Louise Schultz McGillick | Second wife | Born July 12, 1893. |
| Francis Edward McGillick | | Born Feb. 10, 1864. |

The Bishop of the Diocese of Pittsburgh was first advised of the existence of the Foundation on May 16, 1956.

Subsequent to the hearing in these proceedings, the Foundation filed an account with the Orphans' Court of Allegheny County, Pennsylvania. After oral arguments and the submission of issues on briefs, the court on September 24, 1957, rendered the following opinion and decree:

*OPINION*

BOYLE, P. J.

In the audit of the first and partial account of the trustees of the Francis Edward McGillick Foundation several questions are submitted for determination by the Court as follows:

 1. Whether the deed of trust creating the Foundation is irrevocable.

 2. What portion of the income and principal of the trust is permanently dedicated to charitable uses.

 3. What additional compensation shall be allowed to the trustees.

The settlor, Francis Edward McGillick, created a Foundation by deed of trust bearing date of January 6, 1937. The settlor's will, dated May 26, 1936, was incorporated into and made part of the trust instrument. In Paragraph "First" of the deed of trust it is provided:

"FIRST: The said trustees and their successors in their collective capacity shall be designated as far as practicable

 FRANCIS EDWARD McGILLICK FOUNDATION

and under that name shall, as far as practicable, conduct all business and execute all instruments in writing or otherwise in the performance of their trust."

The trust instrument recites, inter alia:

"FOURTEENTH: The fiscal year of the trustees shall end on the 31st day of December in each year.

IN CONSIDERATION OF the donations to and formation of the Francis Edward McGillick Foundation, I, Francis Edward McGillick, Donor, do hereby authorize, empower and direct the said Foundation through its Trustees to assume, pay, and carry out the following bequests and obligations, which are fully set forth in my Last Will and Testament, a copy of which is included herein and made a part hereof. Where executors are mentioned in my said Will, they are to act as Trustees of this Foundation. *My Will and the Foundation are the same.* At my death, all the Executors mentioned in my Will are to be Trustees of the Foundation."

"The trustees hereby accept this trust subject to the aforementioned bequests and obligations of the Donor as set forth in his Last Will and Testament, as follows: * * *" (Underscoring supplied.)

Incorporation of the Foundation after the settlor's death, in the event that he does not effect the incorporation in his lifetime, is provided for in paragraph 13 of the settlor's will which is part of the deed of trust.

The trustees appointed by the settlor in the trust instrument are himself, his wife, Margaret A. McGillick, now deceased, and A. Louise Schultz McGillick, present wife of the settlor.

At the date of the execution of the trust instrument the settlor transferred to the Foundation 49 shares of the capital stock of the F. E. McGillick Company, a Pennsylvania corporation. In 1949 and 1951 valuable parcels or real estate were added to the trust res. Since December, 1949, the income from the trust has been accumulating in the hands of the trustees. The value of the estate at the date of the present accounting is shown by the record to be $1,133,039.91.

The deed of trust, including, as it does, the will of the settlor, provides for the administration and settlement of his testamentary estate and the payment of certain charges and legacies. The residuary estate is given in trust to provide annuities for the settlor's widow, children and some other relatives and to provide monies for the Foundation for the maintenance of two educational funds and a system of vocational schools.

## 1.

There are no dispositive provisions in the deed of trust apart from those in the will which is included in the instrument. No power of revocation is reserved in the deed of trust. In *Ingel's Estate*, 372 Pa. 171, 176, it is held:

"* * * trusts are irrevocable unless a power of revocation is expressly reserved: * * *"

See also *Thompson* v. *Fitzgerald*, 344 Pa. 90 ; *Donnan's Trust Estate*, 339 Pa. 43 ; *Fishblate* v. *Fishblate*, 238 Pa. 450 ; *Kraft* v. *Neuffer*, 202 Pa. 558 ; *Rynd* v. *Baker*, 193 Pa. 486 ; *Wilson* v. *Anderson*, 186 Pa. 531.

The fact that an executed will of the settlor is made part of the declaration of trust does not render the declaration void or ambulatory and the trust res and the income therefrom are bound irrevocably by the provisions of the instrument : *Mayor and City Council of Baltimore* v. *Williams*, 6 Md. 235, 262, 263 ; *Restatement of Trusts*, sec. 330, Comment (e) and Illustration (2) ; *Padfield* v. *Padfield*, 72 Ill. 322 ; *Hamilton Trust Company* v. *Bamford*, 141 At. 267 ; *Hammett* v. *Farrar*, 29 S. W. 2nd 949 ; *Brainerd* v. *First National Bank*, 169 S. W. 2nd 802.

Notwithstanding that the settlor might make some other disposition by will of his property which is outside the trust, yet, as to the property given and conveyed to the Trustees of the Francis Edward McGillick Foundation in the lifetime of the settlor under the provisions of the deed of trust of January 6, 1937, the said deed is conclusive and irrevocable.

## 2.

There is no provision in the deed of trust for the distribution of the income of the Foundation during the life of the settlor. Very specific directions are given for the payment of income after his death. The provisions in the instrument for charitable and educational uses are all included in the will which is incorporated in the deed of trust. This is evidence of the settlor's intention that distribution for these purposes is not to be made until his death.

This intention of the settlor is further evidenced by the fact that the Foundation has never been incorporated. In Paragraph 13 of the will the settlor directs his executors to incorporate the Foundation if he has not done so in his lifetime. There is no charitable corporation with the name Francis Edward McGillick Foundation existing at the present time, although the trustees hold the income and corpus of the trust for the benefit of the unincorporated Foundation established at the inception of the trust.

The donor appears to regard this trust as a decedent's estate, with provision for the payment of funeral expenses, administration expenses, other charges, legacies and annuities to be paid before the charitable provisions of the trust become operative. A strong indication of this appears in Paragraph 19 of the will which is part of the trust instrument and provides as follows :

"19. I hereby authorize, empower and direct my Executors, hereinafter named, when in their judgment and discretion there are more than sufficient funds to provide for the annuities to my wife and children, to transfer or set over to the Francis Edward McGillick Foundation any surplus to form or create the F. E. McGillick Priesthood Fund and the Margaret A. McGillick Sisterhood Fund. After the creation of these two funds, I authorize, empower, and direct my Executors, when in their judgment and discretion it is possible, to transfer and set over unto the Francis Edward McGillick Foundation, whatever funds have accumulated which are not needed to care for the annuities, salaries, and other expenses, for the purposes and uses as set out in paragraph twenty-one (21). I also authorize, empower and direct my Executors to transfer and set over unto the Francis Edward McGillick

Foundation, upon the death of my wife and all of my children, the principal fund of my estate and all the unpaid income or net proceeds thereof."

In the case at bar there is an implied direction to accumulate the income of the trust during the lifetime of the settlor. This is a logical inference where the carrying out of the provisions of the trust instrument will be secured thereby: *Billings Estate*, 268 Pa. 71, 74; *Rhode Estate*, 5 Fid. Rep. 189, 192.

There are conflicting provisions in the deed of trust. The entire instrument must be considered and effect given to all of its reconcilable parts in order to carry out the intent of the settlor as expressed in the language which he used: *Wolters Estate*, 359 Pa. 520, 525; *Damiani* v. *Lobasco*, 367 Pa. 1, 6, 7.

The entire estate embraced by the deed of trust of January 6, 1937, is committed irrevocably by the settlor to the charitable uses therein provided, subject only to the payment of expenses, charges, legacies and annuities which he has directed. The proper distribution of the income and principal of this trust to the charitable beneficiaries named in the trust instrument may only be made after the settlor's death and after the other charges against the fund have been paid or provided for.

3.

The Court approves the claim which the trustees have submitted for additional compensation.

Distribution of the balance shown by the account will be made without prejudice to any rights which the Meadville Park Theater Corporation may have in the same by reason of an alleged fraudulent conveyance by the settlor on January 2, 1952, of an account receivable of F. E. McGillick Company to the trustees of the Foundation. The claim of the Meadville Park Theater Corporation is approximately $14,000.00 and the value of the account receivable is $146,833.31.

A decree will be entered in accordance with this opinion.

## DECREE

And now to wit September 24, 1957, the account in this case having been filed and confirmed nisi and having been examined and audited by the Court, upon consideration thereof it is decreed that the account be confirmed absolutely, and that the funds in the hands of the accountant, to wit $1,133,039.91, be paid in accordance with the schedule of distribution hereto attached and made part hereof unless exceptions are filed within ten days.

*Per Curiam*

### SCHEDULE OF DISTRIBUTION

| | | |
|---|---:|---:|
| Balance | | $1,133,039.91 |
| Balance for Distribution | | 1,133,039.91 |
| To Francis Edward McGillick and A. Louise Schultz McGillick, Accountants Compensation | | $18,583.55 |
| To Accountants for purposes specified in Declaration of Trust balance on Personalty, Securities per First and Partial Account | $636,833.31 | |
| Principal Realty per First and Partial Account | 346,376.04 | |
| Income Cash | 131,247.01 | |
| | | 1,114,456.36 |
| | | 1,133,039.91 |

Opinion filed by Boyle, P. J.

At the time of the creation of the Foundation in 1937, the net assets of the Company had a fair market value of over $500,000.

During the calendar years 1949 through 1952, the net fair market value of the assets of the Company, other than those distributed to the Foundation on December 31, 1949, was in excess of $500,000.

On March 15, 1951, the Foundation by its trustees applied for a ruling exempting it from Federal taxation under the provisions of section 101 (6), I. R. C. 1939. The exemption application stated that the Foundation engaged in the "Operation of rental properties, sales of real estate, investments," and that it derived its income from "Rentals of properties, sales of lots, investments in properties for foundation purposes." The exemption application further stated that McGillick rented and sold properties owned and operated by and for the Foundation, and devoted the benefits of his long experiences to the determination of investments, his purpose being to build up the funds of the Foundation to enable it to carry on the work for which it was created.

On October 3, 1952, respondent ruled that the Foundation was neither organized nor operated exclusively for purposes coming within the meaning and intent of section 101 (6), I. R. C. 1939. After receiving this ruling, the trustees requested a reconsideration by letters dated October 16, 1952, March 17, 1953, and March 24, 1953. On June 12, 1953, the head of Special Technical Services Division of the Treasury Department affirmed the original ruling.

The only tax returns filed by the Foundation from 1937 through 1952 were those filed in 1950 through 1952 on Form 990–A (Return of Organization Exempt from Tax under section 101 (6) of the Internal Revenue Code).[2] The failure to file Federal income tax returns Form 1120 for the years 1949 through 1952 was not due to reasonable cause. On these returns the Foundation stated that the nature of its activities was the "Rental and sales of real estate." McGillick and Louise, who was an attorney, signed these returns as president and treasurer, respectively.

For the years 1950 through 1952, the Foundation reported the following income:

| | 1950 | 1951 | 1952 |
|---|---|---|---|
| Rent received through agent | $73,713.35 | $76,029.64 | $84,735.06 |
| Rent collected by Foundation | 34,232.94 | 35,896.37 | 50,734.60 |
| Income from subsidiaries | 3,929.83 | 4,405.49 | 2,558.57 |
| Total income | 111,876.12 | [1] 116,353.64 | 138,028.23 |
| Total expenses | 98,491.56 | 82,456.56 | 113,063.32 |
| Net income from operation | 13,384.56 | 33,897.08 | 24,964.91 |
| Distribution | 1,000.00 | 1,350.00 | 1,750.00 |
| Amount transferred to earned surplus | 12,384.56 | 32,547.08 | 23,214.91 |

[1] Includes miscellaneous income of $22.14.

[2] It is stipulated that the "Foundation did file Forms 990–A for the taxable years 1950 to 1952, inclusive." The exhibits accompanying the stipulation, however, show that in 1950 the Foundation filed two forms, both of which are designated Form 990 rather than 990–A.

The Foundation also reported income earned by the Company as follows:

| | 1950 | 1951 | 1952 |
|---|---|---|---|
| Gain from sale of lots | $28,503.59 | $8,284.88 | $17,057.75 |
| Rental income | 17,898.16 | 28,550.54 | 17,539.99 |
| Miscellaneous income | 6,374.72 | 27.61 | |
| Income from theaters | 4,797.43 | 513.88 | |
| Interest income | 645.68 | 556.32 | 527.09 |
| Total income | 58,219.58 | 37,933.23 | 35,124.83 |
| Total expenses | 54,289.75 | 33,527.74 | 32,566.26 |
| Net income transferred to Foundation | 3,929.83 | 4,405.49 | 2,558.57 |

The Foundation received no income from 1937 through 1948 when the Company, by deed dated December 30, 1949, transferred to the Foundation title to certain parcels of real property. The conveyance provided, among other things, as follows:

THIS CONVEYANCE IS MADE SUBJECT, however, to the payment by the * * * Foundation of all mortgages now outstanding against said above described properties.

THIS CONVEYANCE is also made subject to the payment by the * * * Foundation of certain monies to the wife, children and grand-children of * * * McGillick, and to certain charitable institutions, after the decease of * * * McGillick, as set forth in a certain Instrument in writing, dated May 26, 1936, and supplements thereto.

THIS CONVEYANCE is also accepted by the * * * Foundation with the understanding that none of the above recited properties are to be sold during the lifetime of * * * McGillick.

These parcels of real property transferred to the Foundation were income-producing properties held by the Company primarily for investment purposes. The interest in real properties which the Company conveyed to the Foundation had a net fair market value on December 30, 1949, of $566,038.58 over and above the mortgages in the amount of $194,711.42. The cost of the properties to the Company was $478,895.52.

On December 31, 1951, the Company transferred to the Foundation two improved parcels of real estate. The fair market value of the interest in properties transferred to the Foundation was $64,257.16 and the properties were subject to mortgages in the amount of $4,257.16. The cost to the Company was $39,149.92.

During the years 1950 through 1952, the officers and trustees of the Foundation held title to the shares of stock in the Company and to the property which had been distributed by the Company to the Foundation. The trustees continued to rent this property and manage it in a manner much the same as had the Company.

On April 2, 1952, the Company transferred to two individuals named Norbert F. and Ruth Dougherty $5,000, plus 3.125 acres of land, which had a tax basis to the Company of $4,730.31 and a fair market value of $22,563.07. In exchange, the individuals transferred to the

Foundation property which had a fair market value of $80,000, and which was subject to a mortgage in the amount of $52,436.93, which was assumed by the Foundation. The Company, in closing its books for the calendar year 1952, charged the $5,000 and the recorded book cost of the land in the amount of $1,822 against and in reduction of an existing indebtedness owed by the Company to the Foundation.

During the years 1949 through 1952, McGillick and Louise were husband and wife and resided at 503 North Homewood Avenue, Pittsburgh, Pennsylvania. For the years 1949 through 1951, McGillick and Louise filed joint income tax returns with the collector of internal revenue for the twenty-third district of Pennsylvania. For the year 1952, McGillick filed an individual income tax return with the district director of internal revenue at Pittsburgh, Pennsylvania. He failed to file a declaration of estimated tax for that year.

On the return filed by McGillick and Louise for the calendar year 1950, McGillick reported $20,000 as salary from the Company. On the Form 990–A filed by the Foundation for 1950, $10,000 of such salary was shown to have been paid by the Foundation and the remaining $10,000 was shown to have been paid by the Company. The amount reported as paid by the Foundation was returned to the Company and credited as an advance by McGillick. McGillick had no salary from the Foundation or the Company in 1951 and 1952.

During the years 1949 through 1952, McGillick and Louise were the sole trustees of the Foundation. McGillick was president and general manager of the Company and the Foundation and Louise was their treasurer. Substantially all of the Foundation's income for the years 1949 through 1952 has been accumulated by its trustees.

For the years 1932 through 1952, the Company's income, salary accrued for McGillick's services, salary retained by McGillick, withdrawals from and advancements to the Company by McGillick were as follows:

| Year | Net income (loss) per income tax return | Salary of F. E. McGillick | Salary retained by F. E. McGillick | McGillick | |
| | | | | Withdrawals (DR) | Advancements (CR) |
|---|---|---|---|---|---|
| 1932 | ($1,714.20) | $3,500 | $3,500 | | |
| 1933 | (37,877.95) | 7,000 | | $8,990.09 | $20,187.12 |
| 1934 | (9,265.33) | | | 18,534.34 | 26,216.64 |
| 1935 | (7,165.76) | | | 19,080.89 | 21,626.57 |
| 1936 | (382.32) | 12,000 | | 22,595.81 | 32,754.97 |
| 1937 | (210.65) | 13,800 | | 29,501.41 | 36,843.04 |
| 1938 | (43.66) | 500 | | 23,130.57 | 18,957.08 |
| 1939 | (270.54) | | | 28,189.61 | 20,854.93 |
| 1940 | (193.67) | | | 18,608.19 | 19,344.32 |
| 1941 | (123.29) | | | 16,669.00 | 21,030.00 |
| 1942 | (358.89) | | | 20,905.53 | 22,313.58 |
| 1943 | (6,942.73) | | | 23,155.78 | 12,575.86 |
| 1944 | (504.07) | | | 11,003.37 | 15,879.49 |
| 1945 | 1,482.07 | 10,000 | 10,000 | 13,565.08 | 2,141.57 |
| 1946 | 46,080.38 | 25,000 | 10,000 | 17,953.29 | 77,294.61 |
| 1947 | 1,016.46 | 32,000 | | 11,950.59 | 22,979.36 |
| 1948 | 399.06 | 40,000 | | 5,884.94 | 76,159.71 |
| 1949 | 17,989.39 | 20,000 | 5,000 | 36,391.91 | 10,800.00 |
| 1950 | 3,929.83 | 10,000 | | 8,146.89 | 16,000.00 |
| 1951 | 4,405.49 | | | 13,741.61 | 21,055.56 |
| 1952 | 2,558.57 | | | | |

By the end of 1951, McGillick's advances exceeded his withdrawals by $147,015.51. He donated this amount to the Foundation in 1952. A reasonable salary for McGillick's services to the Company in 1950 is $6,000. A reasonable salary for his services to the Foundation is $6,000.

The Company's current earnings and profits for the years 1949 through 1951 were $10,475.87, $1,693.43, and $17,450.70, respectively. Its current earnings for the year 1952, including the gain to it on the exchange of property with the Doughertys, were $17,167.37. The Company had no accumulated earnings and profits during the years referred to.

The Company was not organized or operated exclusively for the purposes set forth in section 101 (6).

Some part of the Foundation's net earnings may inure to the benefit of private individuals. During the years 1949 through 1952, none of the Foundation's gross income in excess of amounts conceded by respondent was paid or permanently set aside for the purposes specified in section 23 (o), I. R. C. 1939, or used exclusively for religious, charitable, or educational purposes.

## OPINION.

OPPER, *Judge:*

### *I.*

Respondent's alternative argument that section 166 applies to this trust [3] will not bear analysis. It is based on the form of the instrument which incorporates in the deed a "will" in which McGillick sets forth the purposes of the gift. But we are concerned here only with the property already given, and with respect to that, it is well settled, as petitioners point out, that the "will" loses its ambulatory character and that the gift is irrevocable. *Hamilton Trust Co.* v. *Bamford*, 141 Atl. 267 (N. J. Ch. 1928), affirmed per curiam without opinion 147 Atl. 909 (N. J. Err. & App. 1929); *Hammett* v. *Furrar*, 29 S. W. 2d 949 (Commission of Appeals, Texas 1930); Restatement, Trusts sec. 330, comment e and illustration 2.[4] Of course, other property may (or may not) be left by McGillick when he dies. As to that, any current will, whether or not identical with the one incorpo-

---

[3] SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor.

[4] A similar conclusion was reached by the Pennsylvania Orphans' Court. See Findings of Fact, pp. 1137–1139.

rated in the deed, may be effective. But as to the property now vested in the trustees, and as to the income from it during the instant years, which is all that is here involved, the form of the document and the fact that it is called a "will" is totally irrelevant. Section 166 is accordingly inapplicable since the trust is not revocable.

This being so, petitioners contend that, even though a part of the Foundation's income may accumulate and eventually inure to the benefit of the private individuals who are to receive bequests and annuities under the directions in McGillick's "will," this does not prevent an otherwise eligible charity from attaining exemption under section 101 (6).[5] The payments in question are said to be considered prior charges against the property donated, and with respect to all that remains, organizations have been held to be created and operated exclusively for the purposes specified. *Lederer* v. *Stockton,* 260 U. S. 3; *Emerit E. Baker, Inc.,* 40 B. T. A. 555; *Edward Orton, Jr. Ceramic Foundation,* 9 T. C. 533, affd. (C. A. 6) 173 F. 2d 483. See also *William L. Powell Found.* v. *Commissioner,* (C. A. 7) 222 F. 2d 68.

Here it may be that one of the purposes of the Foundation is religious and that some of its property and income may turn out to be dedicated to that objective. But the gifts to be made from the fund and which were to be paid before any charity would benefit were not merely charges on the original transfer as in *Lederer* v. *Stockton, supra; Emerit E. Baker, Inc., supra; Edward Orton, Jr. Ceramic Foundation, supra.* They were not payable immediately out of either income or principal, and the former has to be accumulated until McGillick's death, under the State court decree.[6]

It cannot thus be said now, as it was in the cited cases that any immediate gift has been made to an individual; and that hence the gift to charity has merely been reduced by the charge so created. It is possible and even probable that the income now being earned may be used for the benefit of these individuals, the donees, in the future. There is nothing in the record to demonstrate that at the time of final distribution there will remain enough of the corpus to pay the described obligations and gifts without resorting to the accumulated income, nor indeed anything to convince us that the trustees cannot

---

[5] SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS.
* * * the following organizations shall be exempt from taxation under this chapter—
(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. * * *
[6] This decree states: "In the case at bar there is an implied direction to accumulate the income of the trust during the lifetime of the settlor. * * *"

first exhaust the accumulations before resorting to corpus.[7] On that ground alone, we should disapprove the attempted resort to section 101 (6), requiring as it does that the purpose of the organization shall be "exclusively" charitable and that no part of the income can inure to the benefit of a private individual. *Gemological Institute of America*, 17 T. C. 1604, affirmed per curiam (C. A. 9) 212 F. 2d 205; *Mabee Petroleum Corp.* v. *United States*, (C. A. 5) 203 F. 2d 872.

In addition, however, it seems clear that the administration expenses of McGillick's estate, as well as all kinds of his taxes and certain debts, are payable in the future out of these funds.[8] This is a direct benefit to him, increasing the private wealth which he can safely dispose of in his lifetime. Had he provided that these funds were to be used to pay his butcher bills or his house rent, they would clearly inure to his personal benefit, *Louis W. Hill*, 33 B. T. A. 891, affd. (C. A. 8) 88 F. 2d 941; *Estate of A. E. Staley, Sr.*, 47 B. T. A. 260, affd. (C. A. 5) 136 F. 2d 368, certiorari denied 320 U. S. 786, and not be eligible for preferred treatment under section 101 (6). *Scholarship Endowment Foundation* v. *Nicholas*, (C. A. 10) 106 F. 2d 552, certiorari denied 308 U. S. 623. We see no distinction in theory from the present provision making this gift, principal and accrued income, liable, as it does, for personal expenses to which he may now or in the future be subject.

Furthermore, the required payment of salary to McGillick for services, which he is already obligated to perform for the Company and the similarly required future payments to his sons, and which are, or certainly may in the future be unreasonably large, prevents us from being able to say that this Foundation was "organized" exclusively for charitable purposes. See *Texas Trade School*, 30 T. C. 642.

The latter propositions are, perhaps, also consistent with respondent's other alternative that petitioner McGillick is taxable on the trust income under section 167 because the income is in effect distributed or accumulated for his benefit, or under *Helvering* v. *Clifford*, 309 U. S. 331. But since this is expressly an alternative, we prefer to rest our decision on the principal contention, and content ourselves with disposing of this by holding, in accordance with the deficiency notice, that the Foundation is not an exempt organization under section 101 (6).

---

[7] See, e. g., the Probate Court's opinion: "The proper distribution of the *income and* principal of this trust to the charitable beneficiaries named in the trust instrument may only be made after the settlor's death and after the other charges *against the fund* have been paid or provided for." (Emphasis added.)

[8] The Probate Court's opinion refers to the fact that "[t]he donor appears to regard this trust as a decedent's estate, with provision for the payment of funeral expenses, administration expenses, other charges, legacies and annuities to be paid before the charitable provisions of the trust become operative."

## II.

What we have said also disposes of petitioners' further contention that the Foundation is entitled to deduct the entire amount of income received because this is either currently distributable to, or must be accumulated for charitable uses. Secs. 162 (a) and (b). That it is not currently distributable is now conceded by petitioners, in accordance with the holding of the local Probate Court.[9] In addition, there is no real showing, as we have already pointed out, that some part or all of the accumulated income may not eventually come into the hands of private individuals. It cannot thus be treated as irrevocably destined for charity. *Boston Safe Deposit & T. Co.* v. *Commissioner*, (C. A. 1) 66 F. 2d 179, affirming 26 B. T. A. 486, certiorari denied 290 U. S. 700.

## III.

When we come to the Company, a more elementary situation is presented. It is a commercial corporation engaged in the real estate business and presumably organized and operated for profit. The only theory on which its income could be viewed as nontaxable would be an application of the "feeder" doctrine. *Roche's Beach, Inc.* v. *Commissioner*, (C. A. 2) 96 F. 2d 776; *Willingham* v. *Home Oil Mill*, (C. A. 5) 181 F. 2d 9, certiorari denied 340 U. S. 852; *C. F. Mueller Co.* v. *Commissioner*, (C. A. 3) 190 F. 2d 120. But see *United States* v. *Community Services*, (C. A. 4) 189 F. 2d 421, certiorari denied 342 U. S. 932; *Donor Realty Corporation*, 17 T. C. 899; *Joseph B. Eastman Corporation*, 16 T. C. 1502; *Eaton Foundation* v. *Commissioner*, (C. A. 9) 219 F. 2d 527, affirming a Memorandum Opinion of this Court; *John Danz*, 18 T. C. 454, affd. (C. A. 9) 231 F. 2d 673, certiorari denied 352 U. S. 828; *Randall Foundation* v. *Riddell*, (C. A. 9) 244 F. 2d 803. Cf. section 301 (b), Revenue Act of 1950, amending section 101, I. R. C. 1939; section 601, Revenue Act of 1951; S. Rept. No. 2380, 81st Cong., 2d Sess. (1950), p. 116.

But while the ownership of its stock by the Foundation does indeed provide a possible charitable destination for some of the earnings distributed by it as dividends, it cannot be said that the Company was organized as well as operated for charitable purposes. Under section 101 (6), the organization is as important as the operation and one is as essential to exemption as the other. There can be no dispute that here the Company was organized solely as a commercial venture. That alone bars its exemption. In that respect the case is vitally different from such cases as *Mueller* where the "feeder" corporation was organized as such and with no other destination for its income.

---

[9] Some was in fact distributed to charity, and for that part respondent has allowed the Foundation credit.

It may be added that the record requires a finding that not all of the income of the Company would be devoted to the Foundation in any event. At least 1 share of its stock is claimed by a private individual, and it is our best judgment from the stipulation that such a claim would be sustained.

On this issue, also, the deficiency must be approved.

## IV.

It seems to be accepted by both parties that the distributions by the Company to the Foundation from 1949 through 1952 were taxable as dividends only to the extent of the stipulated earnings and profits existing in those years; and that any excess is to be applied first against the Foundation's basis with the balance taxable as capital gain.

Although these matters are stated to be in controversy, the briefs apparently eliminate any real issue. The figures are not materially in dispute and the computations involved can be left to the proceedings under Rule 50. The slight discrepancy in amounts has been resolved in our findings in favor of respondent for lack of proof to the contrary.[10]

## V.

McGillick's salary from the Foundation is said to be reasonable because in accord with customary allowances to trustees under Pennsylvania law.[11] There are several difficulties with this contention. In the first place it was in 1950, not 1949, that McGillick was awarded the salary of $10,000 which is in issue. But the large income collections upon which the fees are computed by petitioners were received in 1949, not 1950. The 1950 receipts would not warrant anything like the fees contended for by petitioners under their assumption of what a Pennsylvania court would award. Parenthetically, it may be noted that there is no evidence that any application for approval of the compensation in dispute was ever made to the local Probate Court.

In the second place, as has been noted in connection with the preceding point, most of the distribution, even in 1949, was from capital and it becomes highly doubtful whether any court would award fees based on income receipts under such circumstances.

Respondent has determined that $6,000 was reasonable compensation to McGillick for his services to the Foundation in 1950, and we

---

[10] A somewhat related issue is discussed under point VII, *infra*.

[11] "The Pennsylvania Courts have developed a normal charge or standard commission for trustees by constant setting of the same fee which the trustees may claim. This standard commission or fee is 2 percent of the proceeds of the sale of real estate and 5 percent of other receipts. *Stevenson's Estate*, 4 Wh. 89 (Pa. 1839); *Lilly's Estate*, 37 At. 557, 181 Pa. 478; *Smith's Estate*, 2 At. 2d 779, 332 Pa. 581; *Ashman's Estate*, 67 At. 841, 218 Pa. 509. The term 'usual commission' is 5 percent of trust receipts. *Lilly's Estate*, supra. This 5 percent commission is a convenient yardstick readily available for the use of courts, trustees and beneficiaries to determine the reasonableness of the fiduciary's compensation." (Petitioners' brief.)

find nothing in the record to demonstrate the error of that determination.

The deficiency in this respect is sustained.

## VI.

In a previous controversy between the Company and respondent, we decided that a reasonable annual salary for McGillick's services to the Company for the years 1948 and 1949 was $12,000. *F. E. McGillick Co.*, a Memorandum Opinion of this Court dated December 11, 1953. After the December 30, 1949, distribution of $566,038.58 to the Foundation, the Foundation had property with a fair market value in excess of $500,000 which had until then belonged to and been managed by the Company. The earnings attributable to this property owned by the Foundation in 1950 far exceeded the earnings on the property retained by the Company. We have already concluded that McGillick's services to the Foundation in 1950 were worth $6,000. The facts existing in 1950 are materially different from those which were previously before us, and this issue must be decided *de novo*. *Glenshaw Glass Co.*, 13 T. C. 296. Upon consideration of the facts presented, we have concluded that petitioners have not proved that McGillick's services in 1950 to the Company were worth more than $6,000 nor that the Company was entitled to a deduction of any greater amount. Respondent's determination in this respect is accordingly sustained.

## VII.

Petitioners contend that respondent erred in charging the Company with a taxable gain on the exchange of certain cash and property for other property. Petitioners appear to be arguing that the distribution by a corporation of a dividend in appreciated property is not taxable to the corporation. *General Utilities Co.* v. *Helvering*, 296 U. S. 200. In this case, however, the Company transferred property and cash to a third party and received other property from it in return. At that point the Company was taxable on the difference between its basis and the fair market value of the property received. Sec. 111, I. R. C. 1939. The fact that it distributed the property so received in the course of completing the transaction with the third party cannot have the effect of eliminating the taxability of a transaction, the characteristics of which had already become fixed. *Commissioner* v. *Court Holding Co.*, 324 U. S. 331; *Rose Kaufmann*, 11 T. C. 483, affd. (C. A. 3) 175 F. 2d 28. That the Company never physically received the property but caused it to be transferred directly to the Foundation does not affect the Company's tax liability. *United States* v. *Joliet & Chicago R. Co.*, 315 U. S. 44; *Commissioner* v. *First*

*State Bank*, (C. A. 5) 168 F. 2d 1004, certiorari denied 335 U. S. 867; *Helvering* v. *Horst*, 311 U. S. 112.

It is unnecessary to consider whether the gain from this exchange might fall within one of the statutory nonrecognition provisions, since no such contention is advanced.

Although the matter is not clarified in the briefs, respondent's request for increased deficiencies against the Foundation for 1952 appears to be the result of this same transaction. The receipt by the Company as income of the profits on the exchange would place them in possession of an equivalent amount of additional earnings and profits adequate to support the finding that the receipt of the proceeds of the exchange by the Foundation, stated to be in the amount of $17,832.76, constituted an additional taxable distribution by the Company.[12] This aspect being raised by respondent's amended answer seeking an increased deficiency, the burden of proof as to any disputed facts accordingly rests upon respondent. However, all of the facts of the transaction appear to be in evidence and are contained in our findings. Whatever burden of proof was accordingly involved, respondent must hence be held to have sustained.

Respondent's computation of the amount of gain not being questioned, the determination as well as the increased deficiency claimed in the amended answer is approved.

## VIII.

Respondent determined deficiencies in additions to tax under section 291 (a), I. R. C. 1939, for the failure of the Foundation to file income tax returns for 1949 through 1952 and for the Company's failure to file for 1950 through 1952. No returns were filed by either organization in these years, except for the Forms 990 and 990–A filed by the Foundation for 1950 through 1952.

Petitioners point out that Louise, the treasurer of both the Company and the Foundation, was an attorney, and would have us conclude that this alone establishes reasonable cause. This we are unable to do, for there is no showing that Louise had any connection with petitioners' tax matters except to sign the Forms 990 and 990–A. See *C. R. Lindback Foundation*, 4 T. C. 652, affirmed per curiam (C. A. 3) 150 F. 2d 986.

No other excuse is even intimated as to the Company, but it is also suggested that the pendency of the applications for exemption

---

[12] It is not clear how respondent arrived at the figure mentioned. He did not include in his determination as a taxable distribution the total amount of the equity in the property received from the Company by the Foundation which was stipulated to have a fair market value of $27,563.07 ($80,000 less mortgage assumed of $52,436.93), nor even that amount reduced by the indebtedness to the Foundation of $6,822. Since, however, the only increased deficiency requested is based on the smaller amount, this is the outer limit of what should be included in the Foundation's income.

constituted reasonable cause as to the Foundation. But until long past the time for filing the 1949 return, no such request had even been filed. As to 1950 through 1952, we regard the matter as controlled by *Automobile Club* v. *Commissioner*, 353 U. S. 180. There the Supreme Court held that "the Form 990 returns are merely information returns in furtherance of a congressional program to secure information useful in a. determination whether legislation should be enacted to subject to taxation certain tax-exempt corporations competing with taxable corporations. *Those returns lack the data necessary for the computation and assessment of deficiencies and are not therefore tax returns within the contemplation of § 275 (a)*." (Emphasis added.) It is true the question there was the running of the statute of limitations rather than the addition to tax. But if the paper filed was not a return for any purpose, we fail to see how the mere pendency of the application for exemption can be considered a legitimate excuse for failing to file any return whatever for 4 successive years.

The situation is quite different from that in *Hartford-Connecticut Trust Co.* v. *Eaton* (C. A. 2) 34 F. 2d 128, to which petitioners refer. That was a case where a fiduciary Form 1041 had been filed instead of the return Form 1040. It was later held in *Germantown Trust Co.* v. *Commissioner*, 309 U. S. 304, that the former was a return for purposes of computation and collection of the tax in that all of the material except the tax computation itself was called for by it. In the *Germantown Trust* case for purposes of the statute of limitations, as in *Hartford-Connecticut Trust Co.* v. *Eaton*, *supra*, in the case of the addition to tax, it is evident that a fiduciary return Form 1041 is quite different from a Form 990 which was required, as petitioner correctly states, by section 54 (f) rather than by section 142.

The conclusion of any adequate excuse for failing to file a return cannot, as we have already noted, be reconciled in the case of a Form 990 with *Automobile Club* v. *Commissioner*, *supra*, which the Supreme Court obviously did not think inconsistent with its previous decision in *Germantown Trust Co.* v. *Commissioner*, *supra*. And the statement in petitioners' brief that "Congressional intent appears to be substantiated by the provisions of Section 6501 (g) of the 1954 Code, wherein Congress declares the return executed by a charitable organization will begin the running of the Statute of Limitations," actually leads to the diametrically opposite conclusion as to the delinquency penalty. Cf. *John Danz, supra* at 465.

The deficiencies in additions to tax are approved.

## IX.

The final question is McGillick's liability for additions to tax under section 294 (d) (1), I. R. C. 1939, for failure to file a declaration of

estimated tax for 1952. Petitioners have submitted neither evidence nor argument to justify this failure. The deficiency in this respect must therefore be sustained, except that the amount which will depend upon McGillick's taxable income may be arrived at in the recomputation.

*Decisions will be entered under Rule 50.*