## TEXAS TRADE SCHOOL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59723.    Filed June 18, 1958.

*Allen Melton, Esq.*, for the petitioner.
*Allen T. Akin, Esq.*, and *Timothy G. Warner, Esq.*, for the respondent.

The respondent determined deficiencies in income tax of petitioner for the fiscal years ending May 31, 1947, and May 31, 1948, in the amounts of $302.53 and $2,007.14, respectively.

The sole issue is whether the petitioner is entitled to exemption from tax for the taxable years under section 101 (6) of the Internal Revenue Code of 1939.

### FINDINGS OF FACT.

Some of the facts have been stipulated and they are incorporated herein by reference.

Petitioner is a corporation chartered by the secretary of state of Texas on February 27, 1946. Its officers during the major portion of the period from its incorporation through 1953 were as follows:

    H. C. Brown : President
    Ross A. Peterson : Vice president and director of training
    Allen Melton : Vice president and counsel
    C. J. Jennings : Secretary-treasurer

The officers constituted the executive committee of petitioner and they also were 4 of the 9 members of its board of directors.

The corporate charter of petitioner was amended, under authority of the secretary of state of Texas, November 4, 1946, whereby paragraph 7 was added to the charter, providing as follows:

In case of the dissolution or liquidation of the Corporation, no money, property or thing of value shall be returned to any person, or persons, who may have made a contribution to the Corporation, nor to any member of the Board of Directors of said Corporation, but the Board of Directors of the Corporation, upon dissolution or liquidation, shall automatically thereby and thereon become trustees of all assets of the Corporation, and as trustees, charged with the responsibility and trust of making careful and discreet distribution of all assets to the extent that such assets shall be distributed only for the advancement of the purposes of the Corporation as stated herein.

Petitioner did not file income tax returns for the fiscal years ending May 31, 1947, and May 31, 1948, and did not pay income taxes for those years.

On April 18, 1946, N. E. Busby and P. L. Porter sold to C. J. Jennings, Ross A. Peterson, H. C. Brown, Walter K. Gowdey, and Allen Melton (hereinafter referred to as the Jennings group) property located at 1316 West Commerce Street, Dallas, Texas, having a frontage of 225 feet on West Commerce Street and a depth of 167 feet, for $30,000, of which $5,000 was paid in cash and a note given for $25,000. Title to a one-fifth undivided interest was acquired by Jennings, Peterson, and Brown, a one-tenth undivided interest by Gowdey, and a three-tenths undivided interest by Allen Melton. The purchasers executed a deed of trust dated April 18, 1946, to Louis J. Hexter, trustee, to secure the payment of the $25,000 purchase money note.

The fair market value of the property acquired by the Jennings group from Busby and Porter on April 18, 1946, was $30,000.

In 1946 the property known as 1316 West Commerce Street was located just outside the city limits of Dallas, Texas. It had all city utilities, except sewage, using septic tanks instead.

Petitioner leased the premises at 1316 West Commerce Street from the Jennings group for a period of 5 years beginning April 2, 1946, and ending April 1, 1951, and the rental under that lease for such period was $600 per month. The monthly rental was set by the Jennings group at a figure sufficient to cover the note payments, insurance, and taxes. At the time of the lease there were two buildings on the property, a 1-story brick office building containing approximately 1,800 square feet and a sheet metal shop building with concrete floor containing approximately 4,000 square feet. The office building had no basement and was about 5 years old.

Out of the original ground area acquired by the Jennings group measuring 225 feet of frontage and running back between parallel lines to a depth of 167 feet, the lease excepted therefrom (1) a tract with 75 feet of frontage running back to a depth of 167 feet between

parallel lines, and (2) a tract measuring 30 feet along West Commerce Street and 40 feet in depth located in the northeast corner of the property.

Petitioner has operated a school for trade training on the leased premises continuously since incorporation and lease of the property, and is still engaged in this activity.

The original lease provided that after the period of 30 months had elapsed from the date of the agreement, if the rent of $600 per month was "an untoward burden" upon the lessee, the lessors, at the request of the lessee, would renegotiate the amount of the monthly rent, and if they mutually agreed upon a figure of less than $600 that figure would be binding upon both parties.

In November 1946, two real estate appraisers then employed by the Oak Cliff Bank and Trust Company made appraisals of the property at 1316 West Commerce Street. These appraisals included the following:

> Lot 245 x 167
> Brick office building 20' x 50'
> Sheet iron building 40' x 100'
> Three prefabricated units 16' x 16' each

One appraiser estimated the total value of this property to be $30,524.50 and the other estimated it to be $37,500. The three pre-fabricated units had been placed on the property by petitioner at a cost to it of $4,432.96.

On May 23, 1947, the Jennings group purchased from Rosa Lee Meadows two lots immediately adjacent to the property at 1316 West Commerce Street, which had a frontage of 150 feet on that street. A frame building with 3 or 4 rooms was situated on the Meadows property. This building had been occupied as a residence prior to May 23, 1947. The Jennings group paid approximately $4,500 or $4,700 for the Meadows property.

As of May 31, 1948, petitioner had constructed at its own expense the following buildings and leasehold improvements upon the premises owned by the Jennings group:

| Property | Cost |
|---|---|
| Horology building | $4, 531. 73 |
| Radio building | 10, 810. 57 |
| Three prefabricated buildings | 4, 432. 96 |
| Leasehold improvements generally | 2, 696. 81 |
| Leasehold improvements to upholstery building | 1, 700. 00 |
| | 24, 172. 07 |

These buildings were constructed and improvements made after the beginning of the lease. The insurance on these buildings was paid by the petitioner.

The horology building was constructed in January 1947. It was a 1-story frame building containing approximately 1,150 square feet.

The radio building was constructed in 1948, partly on the premises leased by petitioner and partly on the Meadows tract owned by the Jennings group but never leased to petitioner. It was a 2-story frame building containing approximately 5,400 square feet. It was about 90 feet long, 70 feet of which was on the Meadows tract. The use made by petitioner of that portion of the radio building upon the Meadows tract was merely permissive, and the Jennings group could have terminated its use by petitioner upon notice given at any time, but did not do so.

The three prefabricated buildings were built in 1946, and rested on foundation blocks. Two of these buildings were in use, one as a classroom and the other as a storage building, as late as the date of trial in February 1958, and the third building had been moved away and given to Ross A. Peterson, one of the Jennings group and an officer of petitioner during the taxable years. The latter building had been constructed partially on the property owned by the Jennings group and partially on property owned by an unidentified person.

An aluminum upholstery building was constructed by the Jennings group in 1947, for petitioner's use, on that portion of the tract along West Commerce Street, 75 feet long by 167 feet deep, which was not included in the lease to petitioner. It had a concrete floor of approximately 2,800 square feet. Its cost, approximately $4,500 to $4,750, was borne by the Jennings group. Beginning in July 1947, the rent paid by petitioner to the Jennings group was increased by $200 per month, from $600 to $800, for the use of the upholstery building.

In 1949, petitioner expended $4,246.54 for additions to the radio building and $2,836.86 for an engraving building. The engraving building was a 1-story frame building containing approximately 960 square feet.

During the years 1946, 1947, and through May 31, 1948, the monthly rent was promptly paid by petitioner as it became due. Payments were made to C. J. Jennings as trustee for the owners (the Jennings group).

Except for the amount of $1,687.48 advanced by the Jennings group in 1946, the $25,000 indebtedness against the property purchased from Busby and Porter was paid entirely out of rent payments received by C. J. Jennings, trustee, from the petitioner. This debt was fully paid on or about May 10, 1951.

The entire cost of the Rosa Lee Meadows property, approximately $4,500 or $4,700, was paid by the Jennings group out of rentals which

C. J. Jennings, trustee, received from petitioner. The cost was fully liquidated on May 9, 1951.

The entire cost of the upholstery building, and of sidewalk and other leasehold improvements made by the Jennings group on the 1316 West Commerce Street property, was paid out of rentals which C. J. Jennings, trustee, received from petitioner.

On March 13, 1947, Fred S. Martin, Acting Deputy Commissioner of Internal Revenue, wrote a letter to the petitioner in which he stated that it was exempt from Federal income tax under the provisions of section 101 (6) of the Internal Revenue Code of 1939 and corresponding provisions of prior revenue acts.

By letter dated October 27, 1948, addressed to petitioner, E. J. McLarney, Deputy Commissioner of Internal Revenue, informed it that a reconsideration of its income tax status had resulted in the Bureau's ruling of March 13, 1947, being revoked.

A new lease was entered into by the petitioner and the Jennings group as of April 1, 1951. It covered the same area as the original lease and all buildings on the leased land. It provided for the payment by petitioner of $500 per month for the leased premises. The term of the lease was 1 year and petitioner was given the option to renew from year to year for a period of 5 years at the same rental. The reduction in rent was due in part at least to the fact that petitioner's training programs were directed in large part to returning war veterans, and its revenues from that source had declined.

The rental of $600 per month for the property leased to the petitioner from April 1946 to July 1947, was excessive and unreasonable.

The $200 a month increase in rent beginning July 1947, for use of the upholstery building, was excessive and unreasonable, and the resulting total rent of $800 a month was unreasonable and excessive.

During the years ending May 31, 1947, and May 31, 1948, the petitioner expended approximately $20,000 for buildings and improvements (apart from the prefabricated units) on real estate owned by the five members of the Jennings group, which attached to and became part of that real estate.

A part of the net earnings of the petitioner inured to the benefit of the Jennings group during the years ending May 31, 1947, and May 31, 1948.

OPINION.

RAUM, *Judge:* Section 101 (6) of the Internal Revenue Code of 1939, insofar as here material, provides for exemption from taxation of corporations organized and operated exclusively for educational purposes "no part of the net earnings of which inures to the benefit of any private shareholder or individual."

The respondent determined that the petitioner was not entitled to exemption from taxation under section 101 (6) for the years ended May 31, 1947, and May 31, 1948. The basis of his determination was that five individuals, members of the Jennings group, shared in petitioner's net earnings as the result of the payment to them of excessive and unreasonable rent for real estate leased to or used by petitioner and as the result of the construction by petitioner of buildings and improvements which attached to and became part of their real estate.

The burden of proving that the respondent erred in his determination was on the petitioner. It has not sustained this burden. Early in 1946, a short time after petitioner was incorporated, the 5 members of the Jennings group purchased property at 1316 West Commerce Street in Dallas for $30,000. Four of them were officers of petitioner and members of its executive committee, and they also constituted 4 of the 9 members of its board of directors. They leased a substantial part of the West Commerce Street property to petitioner for 5 years for $600 per month, or an annual rental of $7,200. Based upon the cost of the entire property, and not the portion leased, they received a gross annual return of 24 per cent on their investment. During the year ending May 31, 1948, they received from petitioner $200 per month, or $2,400 per year, for the use of the upholstery building. This building cost them approximately $4,500 to $4,750, so that the gross annual return received upon this investment was approximately 51 per cent. As of May 31, 1948, petitioner had constructed at a cost of almost $20,000 buildings and leasehold improvements (wholly apart from the three prefabricated units about which the parties are in dispute) on property owned by the members of the Jennings group, which attached to and became a part of their real estate.

After a careful consideration of the foregoing and other evidence introduced by the parties, we are convinced that the payments of rent made by petitioner to the members of the Jennings group during the taxable years ending May 31, 1947, and May 31, 1948, were excessive and unreasonable; that as a result of these excessive rent payments part of the net earnings of petitioner for these years inured to the benefit of the members of the Jennings group; and that part of the net earnings of petitioner also inured to their benefit because of the construction at its expense of buildings and improvements on real estate owned by them. We have made findings to this effect, and hold that the respondent did not err in determining that petitioner's income for the taxable years was not exempt from tax.

*Decision will be entered for the respondent.*