Rose Hill Memorial Park, Incorporated v. Commissioner.
Rose Hill Memorial Park, Inc. v. Commissioner
Docket No. 386-62.
United States Tax Court
T.C. Memo 1964-240; 1964 Tax Ct. Memo LEXIS 98; 23 T.C.M. (CCH) 1434; T.C.M. (RIA) 64240; September 11, 1964
Donald P. Richter, 97 Elm St., Hartford, Conn., and Edward G. Hearn, for the petitioner. J. Frost Walker, Jr., for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following deficiencies in petitioner's income taxes: Taxable Year
Ended December 31
Deficiency
1956
$ 7,898.30
1957
8,000.92
1958
4,846.60
1959
9,899.34
1960
12,395.63 The only issue for decision is whether petitioner is exempt from Federal income taxes as a cemetery company or corporation within the meaning of section 501(c)(13) of the Internal Revenue Code of 1954. [1]
*99 Findings of Fact Some of the facts are stipulated and are found accordingly. Rose Hill Memorial Park, Inc. (hereinafter called petitioner) filed an application for exemption from Federal income taxes on Form 1026 on March 26, 1957, with the district director of internal revenue, Hartford, Connecticut. Petitioner received a ruling dated December 24, 1958, from the Exempt Organizations Branch, Internal Revenue Service, holding that it was not entitled to exemption as a cemetery company under section 501(c)(13). Petitioner filed a protest to the ruling on February 17, 1959, and received a ruling letter dated December 14, 1960, adhering to the earlier ruling. On February 6, 1961, petitioner filed Federal income tax returns on Form 1120 for the years 1956 through 1960 with the district director at Hartford, claiming no tax was due because of the asserted exemption under section 501(c)(13). Petitioner was incorporated as a nonstock corporation under the laws of the State of Connecticut on February 26, 1955, as Connecticut Valley Memorial Park, Inc., to "own, operate and manage one or more cemeteries or memorial parks" and to engage in various activities to the extent necessarily *100 incident to that purpose. Petitioner's name was legally changed to Rose Hill Memorial Park, Inc., prior to its becoming active on January 1, 1956. Its principal office is at Elm Street, Rocky Hill, Connecticut. Petitioner owns real estate devoted to cemetery use and derives its income principally from the sale of interment rights (cemetery lots), grave opening and closing charges, and memorial marker installations. Petitioner's Articles of Association provide, inter alia: 5. The corporation shall not be operated for the purposes of speculation in cemetery lots and property, or for private gain, either directly or indirectly to any of the members thereof. No part of its net earnings nor any of its assets of any kind or nature shall inure to the benefit of any private shareholder, individual, member, person, corporation or organization, but all such net earnings shall be irrevocably committed to and utilized in the acquisition, development, care and improvement of the cemeteries or memorial parks to be acquired, owned and/or operated or managed by the corporation. In the event of the dissolution or liquidation of said corporation, no part of its property, assets, surplus or any *101 other thing of value belonging to or in which the corporation shall have an interest shall inure to the benefit of any private shareholder, individual, member, person, corporation or organization, but shall be granted, conveyed, donated or otherwise transferred to a successor corporation, organization, institution or association validly existing under the laws of the State of Connecticut, empowered for the attainment of the same purposes and similarly restricted as to the disposition of its earnings, property and assets. 6. The affairs of the corporation shall be governed and managed by a Board of Trustees consisting of not less than five (5) nor more than nine (9) natural persons who shall be chosen by majority vote of the members of said corporation present at the annual meeting or any adjournment thereof of said corporation. The Board of Trustees shall initially consist of five (5) members who shall be the five undersigned Subscribers (Incorporators). The incorporators of petitioner were Joseph A. Bullock; his wife, Louise M. Bullock; his son-in-law, Nord C. Madsen; his daughter, F. Jean Grant; and another daughter, Elizabeth Madsen. Joseph A. Bullock was president and treasurer *102 of petitioner from 1956 through 1960. Joseph A. Bullock and the members of his immediate family have owned directly or indirectly since 1955 a majority interest and exercised control in The Rose Hill Company, formerly known as the Rose Hill Cemetery Company, Rose Hill Funeral Homes, Inc., and Rose Hill Bronze Memorials, Inc. The officers and directors of these stock corporations were substantially the same as the incorporators of petitioner. Joseph A. Bullock and Louise M. Bullock have been members of the board of directors of the Rose Hill Cemetery Company since 1936. Pursuant to an agreement dated January 1, 1956, Rose Hill Cemetery Company conveyed to petitioner certain real estate which it previously had operated as a cemetery. The purchase price was $112,500, which was 30 percent of the then retail price and fair market value of $375,000 of the 3,021 unsold graves contained in the real estate. The total purchase price was to be paid in not more than eight annual installment payments of not less than $10,000 nor more than $17,500 beginning December 31, 1956. The unpaid balance was to bear interest of 3 percent per annum after January 1, 1960. The sales agreement also provided: *103 It is understood and agreed that the parties hereto contemplate that all other land now owned and that which may be owned by [Company] in the future and located adjacent or in close proximity to land now or subsequently utilized as part of Memorial Park shall be the subject of negotiations between the parties hereto leading to the transfer of such land to [petitioner] upon terms and conditions substantially identical to those upon which this transfer has been predicated. In furtherance of this understanding, [Company] hereby expresses its intention to develop all of the subject land for ultimate conveyance to [petitioner] for use as a part of Memorial Park, and hereby agrees to implement its said expressed intention by creating and denoting Sections within said area, establishing lots by corner markers, maps and numbers, grading and planting grass and cutting pathways and roadways. Included in the property purchased by petitioner were the following graves, as of January 1, 1956: Total graves
21,905
Unsold graves
3,021
Sold graves
18,884
Interments (1930 to January 1,
1956)
3,309
Sold and unoccupied graves
15,575
The basis on January 1, 1956, to *104 Rose Hill Cemetery Company of the entire tract of land and the improvements thereon conveyed to petitioner was $94,516.89. In addition to the sold and unsold graves, the real estate contained improvements such as roadways, arches, music tower, "other modes of beautification," and a one-story cinder block garage. The real estate had been acquired by Rose Hill Cemetery Company from 4 to 26 years prior to the transfer to petitioner in 1956. The cemetery purchased by petitioner had been operated from 1930 to January 1, 1956, as a part of Rose Hill Cemetery Company, a corporation subject to Federal income tax during all of those years. By contract dated January 1, 1956, petitioner granted Rose Hill Cemetery Company exclusive rights as its "Selling Representative" for all its cemetery lots for a term of 10 years. Rose Hill Cemetery Company received a commission of 45 percent of the sales price of each cemetery lot to be paid upon receipt of a lump sum or out of the first payments made under a deferred payment account. The 45 percent commission is in accord with the practice prevailing in the cemetery industry. Petitioner might terminate its commission agreement with Rose Hill Cemetery *105 Company if sales failed to exceed $50,000 per year. The amount of commission might be renegotiated every year but the agreement provided that failure to agree on a different percentage would not permit a party to terminate it. The agreement also required Rose Hill Cemetery Company, at its expense, to maintain records of lots sold on a deferred payment plan and to collect and service all such deferred payments. Article I of petitioner's bylaws provides that members of the petitioner shall be the five incorporators and others elected to membership by a majority of members present at a meeting. Article II of petitioner's bylaws provides, inter alia: During his lifetime, Joseph A. Bullock shall have the exclusive right and power exercisable at any time and from time to time to appoint the Successor of each original Incorporator including himself. Such right and power may be exercised whether or not an original Incorporator is alive and competent and shall be exercised, if at all, only in a writing delivered to the Board of Trustees. Upon his death, Louise M. Bullock shall have the right and power to appoint the Successor of any original Incorporator or his or her Successor. If *106 the said Louise M. Bullock does not appoint any such Successor forthwith, and, in any event, after the death of both said Joseph A. Bullock and Louise M. Bullock, the other original Incorporators or their Successors and the Successors of the said Joseph A. Bullock and Louise M. Bullock theretofore appointed, by majority vote thereof shall have the right and power to appoint the Successor of any original Incorporator or his or her Successor or Successors. Whenever the original Incorporators or their Successors shall fail to appoint Successors, the Members of the Corporation shall thereupon appoint one or more Successor Incorporators so that at all times there shall be not less than five persons there shall be not less than five persons designated as Incorporators or Successors of the Incorporators. While the other bylaws may be amended by a majority vote of the members, Article II can be amended only by unanimous vote so long as either Joseph A. or Louise M. Bullock is alive. Article III of petitioner's bylaws provides that the affairs of petitioner are to be governed and managed by a board of trustees constituted originally of the five incorporators and thereafter of persons elected *107 annually by the members. Article IV provides that officers shall be elected by the board of trustees. Petitioner had gross income as follows: Marker
installations
Interest
Sales
Grave
and lot
(savings
(less cost)
openings
maintenance
account)
Total
1956
$ 40,118.72
$15,645.00
$20,924.01
$ 76,687.73
1957
52,379.35
19,285.00
19,960.69
91,625.04
1958
78,889.90
20,810.00
13,285.00
112,984.90
1959
108,945.09
25,185.00
16,150.39
$ 327.31
150.607.79
1960
106,197.69
24,465.00
18,183.94
1,115.40
149,962.03
Petitioner made salary payments to its officers for part-time work devoted to petitioner's business as follows: Joseph A. Bullock
President and treasurer
1956
$4,000.00
1957
3,975.00
1958
4,050.00
1959
4,250.00
1960
4,331.69
Richard J. Lasher
Vice president
1956
$4,225.00
1957
4,175.00
1958
825.00
Nord C. Madsen
Executive vice president
1958
$1,296.00
1959
2,496.00
1960
4,028.00
Nord C. Madsen was trained and experienced in selling and in the operation and maintenance of cemeteries. Petitioner paid the following amounts to Rose Hill Cemetery Company during *108 the years in issue: 1956
Land purchase price
$16,594.94
Sales commission
24,892.43
Accounting service
2,000.00
Cemetery equipment
notes
4,559.38
1957
Land purchase price
$13,683.54
Sales commission
35,762.80
Accounting service
3,000.00
1958
Land purchase price
$13,000.00
Sales commission
63,946.87
Accounting service
3,000.00
Cemetery equipment
notes
2,279.70
"Interest
R.H.M.P."
1,094.25
1959
Land purchase price
$13,500.00
Sales commission
69,016.29
Accounting service
3,000.00
Cemetery equipment
notes
2,279.70
"Interest
R.H.M.P."
478.74
1960
Land purchase price
$25,810.00
Sales commission
78,964.08
Accounting service
4,000.00
Cemetery equipment
notes
2,279.70
"Interest Rose Hill
Memorial Park"
410.35
In 1956 the average retail price per grave was $124.13. In 1963 the average price had increased approximately 59 percent to $197.46. There remained 748 unsold graves as of January 1, 1963, with a total retail price on that date of $147,705. Petitioner's grave opening and closing charges were $50 per grave on January 1, 1956, and ranged between $65 and $85 per grave as of January 1, 1963. These charges applied to *109 the 3,021 unsold graves and the 15,575 sold but unoccupied graves which petitioner acquired from Rose Hill Cemetery Company on January 1, 1956. During the years in issue petitioner's gross receipts exceeded its total expenses. Petitioner has been held to be exempt from real and personal property taxes in Connecticut. Section 1761(9), Connecticut General Statutes, provides for exemption of property held for cemetery purposes if it is exclusively so used and if no officer, member, or employee of the organization owning the property receives any pecuniary profit except reasonable compensation for services. Amounts received during the years in issue from the sale of bronze memorial markers by Rose Hill Cemetery Company for sale on behalf of Rose Hill Bronze Memorials, Inc., and by petitioner for installation were as follows: Year
Rose Hill Company
Petitioner
1956
$ 36,316.85
$ 8,338.50
1957
72,230.00
13,390.40
1958
93,081.31
10,466.70
1959
115,521.19
14,732.33
1960
48,276.59
17,360.95
Petitioner paid no amounts to Rose Hill Bronze Memorials, Inc., or to Rose Hill Funeral Homes, Inc., for goods or services during the years 1956 through 1960. *110 Purchasers of cemetery lots acquired no voice in the management of petitioner or its earnings. Petitioner was created, at least in part, by the owners of Rose Hill Cemetery Company to convert a part of its operation into a tax-exempt organization and to relieve Rose Hill Cemetery Company of responsibility for maintenance expenses respecting graves sold to the public. Petitioner was publicized as a part of the "Rose Hill Group." Its affairs, such as setting the retail price of cemetery lots, were conducted in close harmony with those of Rose Hill Cemetery Company. There were continuous business dealings between petitioner and Rose Hill Cemetery Company. Opinion The issue confronting us is whether petitioner qualifies as a cemetery company or corporation exempt from Federal income taxes under section 501(c)(13). [2]
*111 In Commissioner v. Kensico Cemetery, 96 F. 2d 594 (C.A. 2, 1938), affirming 35 B.T.A. 498 (1937), the Court of Appeals made the following statements [3] at page 596: There are three statutory requisites for exemption and these are mutually independent. The presence of any of them creates an exemption. Companies are exempt [1) which are owned and operated exclusively for the benefit of their members, or [2] which are not operated for profit, and [3] any corporation chartered solely for burial purposes, as a cemetery corporation and not permitted by its charter to engage in business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual. Petitioner claims to meet the second and third of these criteria. The crux of respondent's position appears to be found in its requested findings of *112 fact that The petitioner is being operated for the purpose of producing a profit for [Rose Hill Cemetery Company] * * * and the stockholders thereof. * * *
[Petitioner]may not be considered as a separate entity which will give [it] a status different than it would have if [it] were operated as a division of [Rose Hill Cemetery Company] * * * under the direct control and management of Joseph A. Bullock. While we have found as a fact that petitioner's affairs were conducted in close connection with the other Rose Hill "enterprises," it is nevertheless a separate entity. Cf. Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943). Petitioner was organized under Connecticut statutes [4] providing for formation of a nonstock corporation for lawful purposes "other than * * * business conducted solely for profit," which implies a grant of power to make an incidental profit.[5] It is true that petitioner realized net earnings from its operations during the years in issue. However, this gain could not be paid to shareholders because there were none. And absent any inurement to the benefit of private individuals, the gain would be available solely for *113 the use of petitioner. Cf. Resthaven Memorial Park & Cemetery Association v. United States, 155 F. Supp. 539 (W.D. Ky. 1957), where a nonprofit corporation organized to care for and maintain a burial ground was held to be exempt under section 101(5) of the Internal Revenue Code of 1939 even though it derived some income from outside investments.
*114 Petitioner's articles of association provide that no part of its net earnings or assets shall inure to the benefit of any party and that "all such net earnings shall be irrevocably committed to and utilized in the acquisition, development, care and improvement of the cemeteries or memorial parks to be acquired, owned and/or operated or managed by the corporation." As we said in Forest Lawn Memorial Park Association, Inc., supra: Nor does the fact that petitioner derived some gain from its activities necessarily indicate that it is a cemetery company operated for profit. Obviously it could not operate and maintain the large acreage devoted to cemetery purposes unless it realized some profit from its sales and services. Irrespective of whether petitioner was operated for a profit, it is clear that it meets the third criterion under section 501(c)(13), i.e., that none of the net earnings inure to any private interests. Payment of legitimate and reasonable charges for property and services, as we have here, certainly does not constitute such inurement. Petitioner paid an amount for the cemetery property equal to 30 percent of the then retail value of the unsold *115 lots. The purchase price was fixed and was not dependent upon the proceeds realized from the sale of individual lots. Cf. Sherwood Memorial Gardens, Inc., 42 T.C. 211 (1964), on appeal (C.A. 7, August 10, 1964); Rev. Rul. 61-137, 1961-2 C.B. 118. Petitioner's indebtedness to Rose Hill Cemetery Company was to be paid in not more than eight annual installments and bore no interest for the first four years and thereafter only 3 percent per annum on the unpaid balance. Thus, there are not present here the factors of unreasonable price and extended credit which led us in Emanuel N. (Manny) Kolkey, 27 T.C. 37 (1956), affd., 254 F. 2d 51 (C.A. 7, 1958), upon which respondent relies, to hold that an alleged "sale" to a tax-exempt organization created equity capital investment rather than indebtedness. Although petitioner, in maintaining the cemetery, would be providing care for lots which it had not sold, this does not appear to be particularly burdensome, and petitioner is not bound to provide any perpetual care. Moreover, it realized additional income through opening and closing charges on those lots which had been sold previously *116 but which were unoccupied at the time it acquired them. Rose Hill Cemetery Company received 45 percent of the sale price of individual lots which it sold under its commission agreement with petitioner. Respondent contends that the increasing price of the lots redounds to the benefit of the seller, thereby giving it an interest in the "net earnings" of petitioner, and that the officers of Rose Hill Cemetery Company are in a position to determine that price. The increasing payment which the Rose Hill Company receives under its commission agreement bears no relationship to the selling price of the whole property. It is compensation for services rendered at a rate which respondent stipulated was "in accord with the practice prevailing in the cemetery industry." The increasing selling price of lots reflects the increasing price of things generally and benefits petitioner as well. Respondent has produced no evidence to show that the creation of petitioner and the conveyance of the cemetery to it have resulted in any financial or tax windfall to Rose Hill Cemetery Company. Respondent questions certain minor payments which we think were made for legitimate purposes. Amounts of salaries *117 paid to petitioner's officers are reasonable compensation for men skilled and experienced in the cemetery business. Payments to Rose Hill Cemetery Company for "cemetery equipment notes" and "interest," which appears to be related to the equipment notes, [6] are modest amounts. While under the commission agreement, Rose Hill Cemetery Company was required, at its own expense, to maintain records of the lots sold and to collect deferred payments, petitioner would nevertheless have need for other additional accounting services for which it paid Rose Hill Cemetery Company. Forest Lawn Memorial Park Association, Inc., supra, at 1103-1104. Respondent cites and relies upon Better Business Bureau of Washington, D.C., Inc. v. United States, 326 U.S. 279 (1945); Texas Trade School, 30 T.C. 642 (1958), affd. 272 F. 2d 168 (C.A. 5, 1959); McBee Petroleum Corporation v. United States, 203 F. 2d 872 (C.A. 5, 1953); and Uniform Printing & Supply Co. v. Commissioner, 33 F. 2d 445 (C.A. 7, 1929). *118 We have considered these cases and find them not only readily distinguishable but also of little or no relevance to the issue before us in this proceeding. From the evidence presented we hold that petitioner was chartered and operated solely for burial purposes as a cemetery corporation, that it did not engage in nor was it permitted by its charter to engage in any business not necessarily incident to such purpose and that no part of its net earnings inured to the benefit of any private individual. Accordingly, it qualifies for exemption from taxation under section 501(c)(13) during the years 1956 through 1960. Decision will be entered for the petitioner. Footnotes
1. All references herein relate to the Internal Revenue Code of 1954 unless otherwise noted.↩
2. SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. (c) List of Exempt Organizations. - The following organizations are referred to in subsection (a): * * *
(13) Cemetery companies owned and operated reclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cometery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inure to the benefit of any private shareholder or individual.↩
3. The court was construing language identical to section 501(c)(13) which first appeared in the Revenue Act of 1921 and has been included in every subsequent Revenue Act and Code. See also Forest Lawn Memorial Park Association, Inc., 45 B.T.A. 1091, 1099↩ (1941).
4. Conn. Gen. Stats. 1949: Sec. 4704. Cemetery associations. Cemetery associations shall be organized in accordance with the provisions of section 5258 and shall not be conducted for the purposes of speculation in cemetery lots and property, or for private gain, either directly or indirectly, to any of the members of any such association; and land for the enlargement of a cemetery may be taken in accordance with the provisions of section 7185. Sec. 5258. Organization; powers; amendment. Three or more persons may associate to form a corporation without capital stock, to promote or carry out any lawful purpose, other than that of a mercantile or manufacturing business, or business conducted solely for profit, by signing and acknowledging before any officer authorized to take acknowledgements of deeds and filing in the office of the secretary of the state a certificate stating: (1) That they do so associate; (2) the purpose or object of the corporation; (3) the town in this state in which the corporation is to be located, the address of the principal office and the agent against whom process may be served. * * *↩
5. Cantervury School, Inc. v. Town of New Milford, 111 Conn. 203, 149 Atl. 685↩ (1930).
6. The amount of the decline in interest each year is equal to 3 percent of payment made annually on the equipment notes.↩