CALVIN K. and MARY I. OAKKNOLL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Oakknoll v. Commissioner
Docket No. 7127-76.
United States Tax Court
T.C. Memo 1978-336; 1978 Tax Ct. Memo LEXIS 178; 37 T.C.M. (CCH) 1380; T.C.M. (RIA) 78336; August 25, 1978, Filed *179 Calvin K. Oakknoll, pro se. William J. Neild, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $ 2,210.89 deficiency in petitioners' income tax for 1974. The sole issue for decision is whether petitioners are entitled to a deduction for contributions made to The Religious Society of Families. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. At the time they filed their petition, petitioners' legal address was Frewsburg, New York. Petitioners founded The Religious Society of Families ("Society") on June 20, 1963. The Society was incorporated in 1968 pursuant to the Religious Corporations Law of the State of New York. [1] There is a written interim constitution signed by petitioner Calvin K. of Oakknoll. The primary objectives of the Society are guidance of human evolution, control of human population growth, and care of the earth so that it may continue to be a reasonably clean and decent habitat for mankind. To achieve these objectives, a territorial concept of *180 marriage is recognized requiring member couples to be responsible for approximately forty acres of Society land. Member families may use up to one-third of this homestead for subsistence; the remaining two-thirds must be kept in its natural state. Between 1968 and 1977 the Society acquired 400 acres of land with two houses, two barns, miscellaneous smaller buildings, and a few animals used to provide dairy products and wool. These assets were purchased mainly with funds contributed by petitioners. Petitioners have sold some cattle and one hog; they made these sales in order to pay property taxes. In the event the Society is disbanded, its constitution provides that the Society's property will be passed to another church, hospital, school, government or other qualified exempt organization as determined by the church members and trustees. The property is not to be divided among the members under any circumstance. Since its inception, petitioner Calvin K. of Oakknoll has been in complete control of the Society. He alone decides who may remain on the land. Although the incorporation document states that the Society will have three trustees, the only constitutional power *181 given to the trustees is with regard to the distribution of property upon the disbandment of the Society. During the year in issue, petitioners were the only participating members homesteading on Society property. They contributed $ 6,064.54 of their own funds to the Society. While at times other individuals received shelter and food from the Society, in 1974 no one besides petitioners benefited from the use of Society property. Petitioners alone had signature authority over the Society's checking account. On their 1974 return, petitioners claimed a $ 9,557.42 charitable contribution to the Society consisting of $ 6,064.54 of cash contributions in 1974 and a $ 3,492.88 carryover from prior years. In his statutory notice respondent disallowed the entire amount claimed. [2]
OPINION The sole issue for determination is whether petitioners are entitled to a charitable deduction of $ 9,557.40 in 1974. Petitioners contributed $ 6,064.54 to The Religious Society of Families ("Society") in *182 that year, and they claimed a charitable contribution carryover of $ 3,492.88 from prior years. Respondent disallowed the claimed deduction in its entirety, and we agree. Subject to certain limitations, section 170 allows a deduction for charitable contributions and carryovers of excess contributions from prior years. In relevant part, section 170(c)(2) defines a "charitable contribution" as a contribution or gift to a foundation organized and operated exclusively for religious purposes, no part of the net earnings of which inures to the benefit of any individual. [3] Although he concedes that The Religious Society of Families is a "religion," respondent contends that no deduction is allowable since (1) petitioners did not make a "gift" within the meaning of section 170(c), (2) the Society was not operated exclusively for religious purposes, and (3) the Society's net earnings inured to the benefit of an individual. We conclude that all of respondent's contentions are well taken. *183 It is well settled that the term "charitable contribution" is synonymous with the word "gift." DeJong v. Commissioner,36 T.C. 896, 899 (1961), affd. 309 F. 2d 373 (9th Cir. 1962). A payment is not a gift if it proceeds primarily from the incentive of anticipated economic benefit to the payor. Id.
Based upon the evidence before us, we are led to the inescapable conclusion that petitioners' 1974 payment to the Society was made in anticipation of substantial economic benefits to themselves. Petitioners had full use and control of the Society's property. They had complete benefit of the Society's shelter and food; they alone decided who might share in this subsistence, meager though it was. In 1974 petitioners were the only persons authorized to draw checks on the Society's accounts. Although the Society had trustees, the trustees had no constitutional power to restrict petitioners' use of the property. In view of these facts, we conclude that petitioners anticipated a direct economic benefit from their payments to the Society. Accordingly, their payments to the Society in 1974 were not "gifts" within the meaning of section 170. Turning *184 to respondent's second contention, section 170(c) (2) (B) provides that the recipient of a charitable contribution must be "operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *." See Edgar v. Commissioner,56 T.C. 717, 755 (1971). In this case, the major activity of the Society was maintenance of the land as a homestead. The Society operated primarily to provide petitioners a place to live, albeit that this action conformed with their religious belief. By providing for petitioners' personal needs, the Society had a "noncharitable purpose substantial in nature." Edgar v. Commissioner,supra at 755. We conclude, therefore, that the Society was not operated exclusively for the specified purposes. Third, from the evidence it appears that the Society's net earnings inured to the benefit of an individual contrary to the requirements of section 170(c) (2) (C). Although it is not clear from the record whether the Society had any earnings in 1974, it is certain that any earnings would be used to satisfy the personal needs of petitioners, who had complete control over the Society's property. See Founding Church of Scientology v. United States,412 F. 2d 1197, 1201-1202 (Ct. Cl. 1969). *185 For example, petitioners sold some cattle and hogs to pay property taxes; these sales inured to their benefit since the sales enabled them to stay on the land. See Texas Trade School v. Commissioner,30 T.C. 642, 647 (1958), affd. 272 F. 2d 168 (5th Cir. 1959). We conclude that in 1974 the Society was structured so that any earnings would inure to petitioners' benefit.
Finally, petitioners claimed a charitable contribution carryover of $ 3,492.88 from prior years. They have presented no evidence in connection with these payments; particularly, they have failed to show that they made deductible charitable contributions in prior years. Accordingly, petitioners have failed to meet their burden of proof, Rule 142(a), Tax Court Rules of Practice and Procedure, and we therefore sustain respondent's determination. Decision will be entered for the respondent.
Footnotes
1. N.Y. Relig. Corp. Law § 3↩ (McKinney 1952).
2. Petitioners have previously appeared before this Court. See Calvin K. of Oakknoll v. Commissioner,69 T.C. 770↩ (Feb. 23, 1978), on appeal (2nd Cir. Apr. 27, 1978).
3. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue. Section 170(c) provides in part: (c) Charitabl Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * *
(2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.↩